http://www.va.gov/vetapp16/Files3/1626394.txt

Citation Nr: 1626394 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 12-20 991A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana

THE ISSUE

Entitlement to service connection for a low back disability as residuals of a back injury. 

REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

N. Missouri, Associate Counsel 

INTRODUCTION

The Veteran served on active duty from January 1968 to January 1976 and from April 1976 to February 1983.

This matter comes before the Board of Veterans' Appeals (Board) on appeal of a raging decision issued in October 2009 by a Department of Veterans Affairs (VA) Regional Office (RO).

In August 2014 the Veteran testified before the undersigned Veterans Law Judge at a videoconference hearing. A transcript of the hearing is of record.

This case was previously before the Board in December 2014, when the Board reopened and remanded the claim for service connection for a back injury for further evidentiary development. This case was remanded again for further evidentiary development in July 2015. 

FINDINGS OF FACT

1. Clear and unmistakable evidence demonstrates that the Veteran's spondylolysis, L5 of the spine pre-existed active duty service and was not aggravated by service.

2. The most probative evidence indicates the Veteran's current back disability is not related to service.

CONCLUSION OF LAW

The criteria for establishing service connection for a low back disability have not been met. 38 U.S.C.A. §§ 1110, 1111, 1131, 1132, 1137, 1153, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.306, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and to Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. VA's duty to notify was satisfied by a letter in August 2009. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

In addition, the Board finds that the duty to assist a claimant has been satisfied. The Veteran's service treatment records (STRs) are on file, as are various post-service medical records. A VA examination has been conducted and an opinion obtained. A Board hearing was conducted in August 2014 and a copy of the transcript has been placed in the claims file. Neither the Veteran nor his representative has alleged any deficiency with respect to the hearing. See Scott, supra.

The Board also notes that actions requested in the prior remand have been undertaken. The Agency of Original Jurisdiction (AOJ) attempted to obtain records from the Social Security Administration (SSA); however, SSA reported that no records were available because they were destroyed. Thus, further attempts to obtain records from the SSA would be futile and are, therefore, unnecessary. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

II. Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed.Cir.2013) (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. §§ 1113, 1132, 1137 (West 2014).

In order to rebut the presumption of soundness at service entry, there must be clear and unmistakable evidence showing that the disorder pre-existed service and was not aggravated by service. A lack of aggravation may be shown by establishing that there was no increase in disability during service or that any "increase in disability [was] due to the natural progress of the pre-existing condition." Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). If the government fails to rebut the § 1132 presumption, the claim is one for service connection, not aggravation. Id. 

A pre-existing disease or injury will be found to have been aggravated by service only if the evidence shows that the underlying disability underwent an increase in severity; the occurrence of symptoms, in the absence of an increase in the underlying severity, does not constitute aggravation of the disability. Davis v. Principi, 276 F.3d 1341, 1345 (Fed. Cir. 2002); 38 C.F.R. § 3.306(a). Evidence of the veteran being asymptomatic on entry into service, with an exacerbation of symptoms during service, does not constitute evidence of aggravation. Green v. Derwinski, 1 Vet. App. 320, 323 (1991). A temporary or intermittent flare-up of a pre-existing disease does not constitute aggravation. Hunt v. Derwinski, 1 Vet. App. 292, 297 (1991). If the disorder becomes worse during service and then improves due to in-service treatment to the point that it was no more disabling than it was at entrance into service, the disorder has not been aggravated by service. Verdon v. Brown, 8 Vet. App. 529 (1996).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81(Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran contends that he currently suffers from a low back disability due to an injury he sustained in service, to include getting trapped behind a 2 1/2 ton truck. 

The Veteran's STRs reveal that the Veteran denied having a back disability or recurrent back pain on his January 1968 entrance report of medical history. No spine abnormalities were noted on the accompanying report of medical examination. In March 1969, he was involved in an accident when a 2 1/2 ton truck backed into him and pinned him against a steel wheel roller. The truck tried to get off of him and back into him a second time before finally releasing him. The Veteran was medevac'd to a hospital in Saigon, Vietnam and thereafter flown to a hospital in Japan. In June 1969, the Veteran was seen on sick call and reported that he was informed that there was no fracture in his back but that the curve in his back was lost. The impression was an old muscular injury. Several STRs document treatment for low back pain following the incident. In April 1977, an examination of the lumbar spine revealed bilateral spondylolysis at the L5 level. It was a Grade I spondylolisthesis of L5 on S1 and no other abnormalities were present. In that regard, a Medical Evaluation Board (MEB) in December 1980 recommended that the Veteran be medically discharged due to spondylosis L5, which the MEB characterized as having existed prior to service and having been aggravated by service. This recommendation was reversed by an informal Physical Evaluation Board (PEB) in January 1981 and a formal PEB in March 1981, both of which found the Veteran to be fit for duty within the requirements of his grade, his military occupational specialty and his profile limitations. A May 1982 radiography report revealed that the lumbar spine suggested ligamentous laxity and that the L5 vertebral body appeared to be displaced slightly anteriorly. The vertebral body height and alignment was otherwise normal. 

Relevant post-service VA treatment records include an x-ray of the lumbar spine in April 2005 which revealed lumbarization of S1 but was otherwise a normal study. In September 2009, a private treatment record indicated that the Veteran had attended physical therapy two to three times a week for the past eight weeks and that his back pain had decreased by 25 percent. A CT scan from August 2009 revealed a slight spondylolisthesis with bilateral spondylolysis at the L5-S1 intervertebral disc space. There was also suggestion of bilateral foraminal stenosis. 

The Veteran was afforded a VA examination in connection with his claim for service connection in May 2010. He reported that his back pain was moderate but constant. He stated he was unable to walk more than a few yards and that he used a cane. The VA examiner opined that the slight spondylolisthesis with bilateral spondylolysis/foraminal was not caused by or a result of low back strain because the low back strain was relatively minor inasmuch as he required only sporadic medication in and outside military service and he held numerous physical jobs for decades. The examiner elaborated that the Veteran's x-rays did not show severe localized changes that would be present after all these years if the strain were the cause of his present condition. 

The Veteran submitted a statement from a private physician in September 2012, who stated that during his interview with the Veteran he reviewed documents detailing the Veteran's multiple visits and medical treatments for low back pain while in active service. The physician opined that given his physical examination and the documents shown to him, the Veteran's low back pain was related to his previous injuries while on active duty military service and it appeared to be a service-related medical condition. 

During his August 2014 hearing, the Veteran testified that following his injury in 1969, he continued as a heavy equipment operator after recovery. He stated that after service he drove a truck hauling asphalt and did a little logging. He also worked at a gravel pit. The Veteran testified that his low back pain was getting worse and that it was hard for him to walk. He indicated that he used a cane but that sometimes the nerves in his back interfered with his legs and caused him to fall because his legs gave way. 

Thereafter, pursuant to the Board's December 2014 remand directives, a VA examiner provided an addendum opinion in January 2015. The examiner opined:

Spondylolysis is a defect in pars which may be congenital (most common and was likely in this case) or from severe trauma (which the records show did not occur based on his minimal impairment in service and ability to serve without restrictions for decades.) Therefore it is likely this was congenital and pre-existent. Many of these are asymptomatic unless there is a subsequent injury which damages the fibrous band bridging the defect. 

The records do not show any aggravating circumstance and there was no evidence of slippage ("olisthesis") which produces the symptoms because of a minimal limitation from 1969 accident, the absence of symptoms and an uneventful long service in military as well as no problems post [discharge] for decades doing heavy work.

After review of the evidence of record, the Board finds that the Veteran's claim for service connection for a low back disability must be denied. Although the Veteran currently has a low back disability, the most probative evidence of record clearly establishes that his spondylolysis pre-existed his military service and was not aggravated by service.

At the outset, the Board acknowledges that the Veteran currently has spondylolysis. The Board also acknowledges that the service entrance examiner did not note a disability related to the Veteran's back, and that the Veteran did not report a history of recurrent back pain. Thus, the presumption of soundness attaches. 38 U.S.C.A. § 1111(West 2014); see also Bagby v. Derwinski, 1 Vet. App. 225, 227 (1991).

However, the most probative evidence of record clearly establishes that the Veteran had spondylolysis that pre-existed his military service. Although, the Veteran contends that his back disability is related to an injury he sustained during service, the 2015 VA examiner determined that the Veteran's spondylolysis existed prior to service. Regarding the absence of symptoms prior to service, the examiner noted that spondylolysis is often asymptomatic. Additionally, the MEB determined that the Veteran's spondylolysis existed prior to service. Accordingly, the Board finds that there is clear and unmistakable evidence that the Veteran's spondylolysis existed prior to service and was not aggravated thereby.

Having determined that the Veteran's spondylolysis existed prior to service, the Board must next address whether that condition was aggravated by service. As noted previously, a pre-existing injury or disease will be considered to have been aggravated by active service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progression of the disease. 38 C.F.R. § 3.306(a). Temporary or intermittent flare-ups of a pre-existing injury or disease are not sufficient to be considered aggravation in service unless the underlying condition, as contrasted with symptoms, worsened. Jenson v. Brown, 4 Vet. App. 304 (1993); Green v. Derwinski, 1 Vet. App. 320 (1991); Hunt v. Derwinski, 1 Vet. App. 292 (1991).

In this case, the Board finds that there is clear and unmistakable evidence establishing that the Veteran's pre-existing spondylolysis was not permanently aggravated in service. Specifically, the Board finds the opinion expressed by the July 2015 examiner, who indicated that the Veteran's spondylolysis was not permanently aggravated by service, highly probative. The 2015 examiner's opinion was based on review of the Veteran's in-service treatment records, post-service treatment records (including the private medical opinion), and a physical examination, as well as the Veteran's occupational history. Based on that evidence, the examiner concluded that the Veteran's current spondylolysis had not been permanently worsened by his service. The examiner explained that the Veteran's treatment records failed to show that he had symptoms of slippage and he continued service in the military for years after the incident and continued to do heavy work for decades thereafter, his spondylolysis was not aggravated beyond its natural progression by an in-service injury, event, or illness. Ultimately, the 2015 examiner's conclusions are fully explained, are consistent with the competent and credible evidence of record, and are unequivocal in finding that the Veteran's spondylolysis was not aggravated by service.

The Board finds that the private medical opinion warrants less probative weight. Specifically, he did not address the finding in service that the Veteran's back disability preexisted service, nor was adequate rationale provided. Thus, the physician was not fully informed of the facts of this case, and the opinion he provided is entitled to little, if any, probative weight. Additionally, the note by the MEB that the Veteran's spondylolysis was aggravated by his back injury is given less probative weight because no rationale was provided, and the PEB subsequently found him fit for duty. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (holding that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes to the probative value of a medical opinion); see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions.").

In summary, the most probative evidence of record clearly and unmistakably establishes that the Veteran's current spondylosis pre-existed service and was not aggravated by service. See Holton v. Shinseki, 557 F.3d 1362, 1367 (Fed. Cir. 2009) ("The presumption of soundness...does not relieve the veteran of the obligation to show the presence of a current disability and to demonstrate a nexus between that disability and the in-service injury or disease or aggravation thereof."). Thus, the Board finds that the preponderance of the evidence is against the claim for service connection, and it must be denied.

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990). 

ORDER

Service connection for a low back disability is denied. 

____________________________________________
K. A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs