http://www.va.gov/vetapp16/Files5/1641961.txt

Citation Nr: 1641961 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 14-18 374 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee

THE ISSUE

Entitlement to service connection for bilateral hearing loss.

REPRESENTATION

Veteran is represented by: Disabled American Veterans

ATTORNEY FOR THE BOARD

C. Banister, Associate Counsel

INTRODUCTION

The Veteran served on active duty from January 1955 to June 1956 and from August 1967 to February 1968. This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2012 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO).

This matter was previously before the Board in August 2014, at which time it was remanded for further development. The requested development was completed, and the case has been returned to the Board for further appellate action.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. A bilateral hearing loss disability was not shown during the Veteran's period of active duty from January 1955 to June 1956 or for several years thereafter, and the most probative evidence shows that the Veteran's bilateral hearing loss is not related to that period of service.

2. A bilateral hearing loss disability was noted on clinical examination at the time the Veteran entered his second period of active duty from August 1967 to February 1968.

3. The most probative evidence shows that that Veteran's preexisting bilateral hearing loss was not aggravated during his period of service from August 1967 to February 1968.

CONCLUSION OF LAW

The criteria for establishing entitlement to service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1101, 1110, 1111, 1112, 1131, 1137, 1153, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.306, 3.307, 3.309 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duty to Notify and Assist

Under the Veterans Claims Assistance Act of 2000 (VCAA) VA has a duty to notify and assist a claimant in the development of a claim. VA's duty to notify was satisfied by a letter in November 2010. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

Concerning the duty to assist, the record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, post-service VA and private treatment records, and VA examination reports. 

The Board also notes that action requested in the prior remand has been undertaken. In January 2016, the RO obtained a VA medical opinion addressing the question of whether the Veteran's preexisting hearing loss was aggravated during his second period of service. The Board notes that in a September 2016 appellate brief, the Veteran's representative asserted that that the claim should be remanded for a new medical opinion because the January 2016 VA examiner was unable to provide the requested opinion without resorting to speculation. However, an inability to provide an opinion without resorting to speculation does not render a VA examination inadequate as long as the examiner explains why an opinion would require speculation or the reasons for the opinion are "otherwise apparent in the Board's review of the evidence." Jones v. Shinseki, 23 Vet. App. 382, 390 (2010) (noting that VA's duty to assist "does not extend to requiring a VA physician to render an opinion beyond what may reasonably be concluded from the procurable medical evidence," and "notwithstanding the duty to assist, it remains the claimant's responsibility to submit evidence to support his claim."). In this case, the examiner explained why she could not render a conclusive opinion on whether the hearing loss worsened during service, but ultimately went on to provide an opinion that even accepting for the sake of argument the hearing loss had worsened during service, it was more likely due to the natural progress of the preexisting hearing loss. The examiner provided a rationale for that conclusion as well. Moreover, the record contains a September 2012 VA medical opinion addressing the question of whether the Veteran's preexisting hearing loss was aggravated during his second period of service. The September 2012 VA examiner provided a rationale to support the opinion, and the Veteran's representative has not taken issue with that opinion. Accordingly, the Board finds that VA has satisfied its duty to assist in obtaining an adequate medical opinion. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). Thus, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

Analysis

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013) (holding that only conditions listed as chronic diseases in § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).
 
Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999).

Moreover, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, and sensorineural hearing loss, become manifest to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 C.F.R. §§ 3.307, 3.309; see also Fountain v. McDonald, 27 Vet. App. 258, 271 (2015). This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309. 

Additionally, a preexisting disease or injury will be considered to have been aggravated by military service where there is an increase in disability during service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306(a). Where a preexisting condition was noted upon entry into service, the veteran has the burden of showing that the preexisting condition worsened in service. Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). If the veteran establishes worsening during service, then the disability is presumed to have been aggravated in service, and the burden shifts to VA to show by clear and unmistakable evidence that the worsening of the condition was due to the natural progress of the disease. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306; Horn v. Shinseki, 25 Vet. App. 231, 235 n. 6 (2012). 

Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during, and subsequent to service. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306; Green v. Derwinski, 1 Vet. App. 320 (1991). "Temporary or intermittent flare-ups during service of a preexisting injury or disease are not sufficient to be considered 'aggravation in service' unless the underlying condition, as contrasted to symptoms, is worsened." See Hunt v. Derwinski, 1 Vet. App. 292, 297 (1991).

For VA compensation purposes, impaired hearing will be considered a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385 (2015).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran asserts that his current hearing loss was caused by in-service noise exposure, or alternatively, in-service head injuries. 

A January 1955 report of physical examination shows that the Veteran was administered a whisper test upon entering his first period of active duty, which revealed 15/15 in both ears. Treatment records for that period of service show no complaints of or treatment for hearing loss. Service treatment records dated May 1956 indicate that the Veteran was admitted to Balboa Naval Hospital for evaluation and treatment of immaturity with symptomatic habit reaction, somnambulism. A June 1956 board of medical survey report shows that the Veteran was found to be unfit for military service due to preexisting symptomatic habit reaction and somnambulism, and the Veteran was medically discharged later that month. 

A January 1958 VA treatment record shows that the Veteran was hospitalized following a motorcycle accident. It was noted that he sustained a head injury and was comatose for seven days. The diagnoses were basilar skull fracture, subarachnoid hemorrhage, and cerebral spinal fluid otorrhea.

In September 1958, the Veteran filed a service connection claim for a psychiatric disability resulting from an alleged in-service accident. In a written statement submitted with that claim, the Veteran asserted that he was not ill or nervous until a plane hit the side of his ship while serving off the coast of Pearl Harbor. The Veteran reported being thrown against the front hatch, "shaking [him] up and injuring [his] shoulder." 

The earliest evidence of a hearing loss disability was shown on a May 1967 audiogram conducted upon the Veteran's entrance into his second period of active duty. The audiogram revealed puretone thresholds, in decibels, as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
25
20
60
--
60
LEFT
0
5
15
--
40

The examination report shows a diagnosis of defective hearing. A September 1967 service treatment record shows that the Veteran reported a history of trauma in 1957, which left him in a coma for 14 days. He also reported receiving a blow to the right parietal area that morning and experiencing tinnitus in the right ear. When asked about his history of hospitalizations, the Veteran reported being hospitalized at Balboa Naval Hospital after suffering a ruptured shoulder aboard a ship in 1956, and in 1957, sustaining a concussion, skull fracture, and hemorrhage after an automobile accident. Another October 1967 service treatment record shows that the Veteran complained of difficulty hearing in the right ear, "roaring" in the right ear, and headaches on the right side. It was noted that the Veteran sustained a head injury prior to service and that his present problems were accentuated by any activity. Treatment records from the Veteran's second period of active duty show no other complaints of or treatment for hearing loss. A January 1968 separation audiogram did not reveal a hearing loss disability. Thereafter, the Veteran was medically discharged due to chronic neurotic depression with acute exacerbation of psychotic proportions. 

In March 1973, the Veteran filed a service connection claim for right ear hearing loss, which he asserted was related to training at Fort Bliss during his second period of active duty. 

The Veteran underwent a VA audiological examination in October 1975, during which he reported being unable to hear out of his right ear ever since an accident that occurred during his first period of active duty. Specifically, he reported striking his head while trying to rescue crewmen off of an airplane, after which he was reportedly hospitalized at Balboa Naval Hospital. 

A November 2010 VA treatment record shows that the Veteran reported a history of sudden hearing loss in the right ear following a car accident in which he sustained a skull fracture. 

In a December 2010 written statement, the Veteran asserted that during his first period of active duty, he struck the right side of his head and bled form the right ear while attempting to recover a seaplane that crashed off the coast of Hawaii. He stated that he was subsequently treated at Balboa Naval Hospital and experienced difficulty hearing ever since. 

The Veteran underwent a VA examination in July 2012, during which he reported noise exposure from aircraft engines while serving in the Navy. He also reported an injury to the right side of the head while in the Navy, which left the right ear without hearing. The examiner noted that no audiometric evidence substantiating the Veteran's claim could be located and that the Veteran served less than one year in the Army. He reported noise exposure from small arms fire and hand grenades during basic training and was medically separated prior to receiving advance training. Audiometric testing revealed a diagnosis of bilateral sensorineural hearing loss in the frequency range of 500 to 6000 Hertz or higher. The examiner opined that the Veteran's hearing loss was less likely than not caused by or a result of an event during service and provided the following rationale:

The Veteran's enlistment physical exam[ination] for the Navy is dated [January 1955]. His hearing was assessed using the Whispered Voice Test. His separation physical exam from the Navy could not be located in his [claims file or service treatment records]. The Veteran's Army enlistment physical exam dated [May 1968 (sic)] indicated hearing loss bilaterally. His medical board separation physical exam dated [January 1968], however, indicated normal hearing bilaterally. This examiner could not find consistent evidence indicating that the Veteran incurred noise-induced hearing loss while serving in the Navy or Army. 

In September 2012, the RO obtained a supplemental opinion with respect to the question of whether the Veteran's preexisting hearing loss was aggravated during his second period of active duty. The VA examiner reviewed the evidence of record and noted that the Veteran was involved in a motor vehicle after his first period service, during which he sustained a basilar skull fracture and a concussion and was unconscious for 14 or 15 days. Thereafter, the examiner noted that a May 1967 physical examination documented bilateral hearing loss upon the Veteran's entrance into his second period of active duty. It was noted that in September 1967, the Veteran suffered a blow to the head and reported tinnitus following the incident, but did not mention decreased hearing. Thereafter, a January 1968 audiogram showed normal hearing thresholds bilaterally from 500 to 4000 Hertz, which suggested improvement in hearing sensitivity during that period of service. However, the examiner stated that "it should be noted that the exit examiner indicated 'nonorganic hypoacusis' in the notes section (directly below thresholds) on the exit exam and normal hearing thresholds were recorded bilaterally." The examiner also noted that a July 2008 VA audiology treatment record indicated that the Veteran had a history of sudden hearing loss in the right ear following the car accident during which he sustained a skull fracture. The examiner provided the following etiological opinion:

Based on the evidence above, it is clear that the Veteran's hearing loss was incurred as a result of a car accident that was clearly not service-related. There is no documentation within the [claims] file that indicates exacerbation or aggravation of hearing loss during military service. Therefore, it is the opinion of this examiner that the Veteran's hearing loss is less likely than not . . . a result of in-service noise exposure, caused by or a result of an incident that occurred during military service, or aggravated beyond normal progression by any event during military service.

In January 2016, the Veteran underwent another VA examination. With respect to the question of whether the Veteran's preexisting hearing loss underwent a permanent worsening during his period of active duty from August 1967 to February 1968, the examiner provided the following opinion:

Exit exam shows normal hearing 500-4000 [Hertz] with thresholds ranging from 5-15 [decibels]. This finding is unexpected based on the finding of hearing loss on the [August 1967] exam, and may indicate that either the entrance or exit exam was invalid. However, because there is no finding of hearing loss at exit, this examiner cannot determine conclusively whether or not there was a worsening of hearing during this period. Therefore, it would be mere speculation for this examiner to opine regarding whether or not there was a permanent worsening of hearing during this period. 

The examiner further opined that "if there was a permanent worsening of hearing loss during this period, it is more likely than not related to the normal progression of the preexisting disability and less likely than not related to in-service aggravation due to military noise exposure." In support of this, the examiner provided the following rationale, in relevant part: 

As noted above, it would be mere speculation for this examiner to opine on whether or not there was a permanent worsening of hearing during this period. However, the Veteran's records for the period of [August 1967 to February 1968] state that the Veteran was a trainee and was discharged for physical disability. He states that he was an instructor for troops on the firing range. This cannot be confirmed. However, the examiner finds no evidence that there was extensive noise exposure during this period. Furthermore, this period of service was very limited. 

A review of the record reveals that the Veteran was in sound condition with respect to his hearing ability upon entering his first period of active duty from January 1955 to June 1956. Although the Veteran has, on some occasions, related his hearing loss to striking the right side of his head during a rescue mission during that period of service, his assertions are not consistent with the evidence of record. The Veteran stated that he was treated at Balboa Naval Hospital for a head injury and bleeding from the right ear following the alleged incident. However, service treatment records show no treatment for a head injury, bleeding from the right ear, or hearing loss. Rather, the record indicates that the Veteran was admitted to Balboa Naval Hospital for evaluation and treatment of immaturity with symptomatic habit reaction, somnambulism. See Curry v. Brown, 7 Vet. App. 59, 68 (1994) (holding that contemporaneous evidence has greater probative value than history as reported by a veteran). Additionally, in a September 1958 written statement, the Veteran described psychological and shoulder injuries resulting from the alleged in-service accident, but did not report a head injury, bleeding from the ear, or hearing loss. See AZ v. Shinseki, 731 F.3d 1303, 1315 (Fed. Cir. 2013) (quoting United States v. Robinson, 544 F.2d 110, 114 (2d Cir. 1976) as recognizing the widely held view that "[t]he absence of a record of an event which would ordinarily be recorded gives rise to a legitimate negative inference that the event did not occur"). Moreover, on other occasions, the Veteran has related his hearing loss to the 1957 motorcycle accident. See Caluza v. Brown, 7 Vet. App. 498 (1995) (finding that in weighing credibility, VA may consider inconsistent statements, internal inconsistency, and consistency with other evidence of record). Accordingly, the Veteran's assertions of continued hearing loss since the claimed injuries during his first period of service are not persuasive. See Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (2006) (the lack of contemporaneous medical records, the significant time delay between the affiants' observations and the date on which the statements were written, and conflicting statements of the veteran are factors that the Board can consider and weigh against a veteran's lay evidence). 

The Board finds the July 2012 opinion of the VA examiner to be highly probative, as the examiner reviewed the evidence of record and provided a reasoned medical explanation; namely, that there was no evidence of record to support the incurrence of noise-induced hearing loss or hearing loss following an alleged head injury during service. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-04 (2008) (holding that it is the factually accurate, fully articulated, sound reasoning for the conclusion that contributes to the probative value of a medical opinion). 

With respect to the Veteran's second period of service, a preexisting bilateral hearing loss disability was shown on clinical examination at the time of the Veteran's entrance into active duty. See 38 C.F.R. § 3.385. Thus, in order to establish service aggravation, the Veteran has the burden of showing that the preexisting condition worsened during that period of service. See Wagner, 370 F.3d at 1096.

Service treatment records show that the Veteran reported symptoms of tinnitus in the right ear following a blow to the right parietal area in September 1967. However, there was no mention of hearing loss. In October 1967, the Veteran did complaint of difficulty hearing in the right ear, and it was noted that he sustained a head injury prior to service. Although the treatment provider noted that the Veteran's problems were accentuated by any activity, the record shows no additional complaints of or treatment for hearing loss during service. Additionally, the September 2012 VA examiner opined that the Veteran's preexisting hearing loss was not aggravated by service. The Board finds the September 2012 VA examiner's opinion to be highly probative, as it is based a thorough review of the claims filed and supported by a reasoned medical explanation. The examiner explained that there was no evidence of record to support a finding of exacerbation or aggravation of hearing loss during service, and although nonorganic hypocausis was noted on the Veteran's January 1968 separation examination, an audiogram showed normal hearing thresholds bilaterally from 500 to 4000 Hertz, which suggests improvement in hearing sensitivity during that period of service. 

Although the January 2016 VA examiner was unable to "determine conclusively whether or not there was a worsening of hearing during" the Veteran's second period of service because one of the Veteran's in-service audiograms may have been invalid, the examiner noted that it was unlikely that the Veteran's claimed noise exposure during his limited period of training would permanently worsen his hearing ability. Moreover, the examiner did not find any evidence of record that would support a finding that the Veteran's preexisting hearing loss worsened during service. Indeed, the separation examination showed improvement. In sum, the Board finds that the evidence of record does not demonstrate aggravation of the Veteran's preexisting hearing loss during his second period of service. See Wagner, 370 F.3d at 1096 (the veteran has the burden of showing that the preexisting condition worsened in service). 

While the Veteran believes that his current hearing loss is related to service, as a lay person, the Veteran has not shown that he has specialized training sufficient to render such an opinion. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). In this regard, the diagnosis, etiology, and/or aggravation of a hearing loss disability are not matters capable of lay observation and require medical expertise to determine. Moreover, whether the symptoms the Veteran reportedly experienced in service or following service are in any way related to his current disability is also a matter that also requires medical expertise to determine. See Clyburn v. West, 12 Vet. App. 296, 301 (1999) ("Although the veteran is competent to testify to the pain he has experienced since his tour in the Persian Gulf, he is not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with."). Thus, the Veteran's own opinion regarding the etiology of his current bilateral hearing loss is not competent medical evidence. 

In summary, the preponderance of the competent, credible, and probative evidence is against the Veteran's claim, and service connection for bilateral hearing loss is denied. In reaching this decision, the Board considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against the Veteran's service connection claim for bilateral hearing loss, the doctrine is not for application. See Gilbert, 1 Vet. App. at 56.

ORDER

Service connection for bilateral hearing loss is denied.

____________________________________________
K. A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs