**William F. HUNT, Jr., Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–543.**

United States Court of Veterans Appeals.

Submitted Feb. 8, 1991.

Decided June 5, 1991.

Jean M. Hunt (non-attorney), was on the brief, for appellant.

Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Associate Judges.

HOLDAWAY, Associate Judge:

Entitlement to service connection for aggravation of a right knee disability was denied by the Veterans' Administration (now Department of Veterans Affairs) (VA) in October 1954, in February 1978, and in June 1989. On March 2, 1990, after conducting a review of the entire record of the case, the Board of Veterans' Appeals (BVA) determined that the preexisting right knee condition was not aggravated in service. Appellant, William F. Hunt, Jr., appeals the decision of the BVA.

The BVA denied service connection based upon aggravation of the injury in service because it found that "the status of the knee [up]on entry into the service was comparable with its status at the time of separation from service." *William F. Hunt, Jr.*, loc. no. 007992, at 6 (BVA Mar. 2, 1990). The BVA concluded that because there was no increase in the severity of the knee injury during service, service connection based upon aggravation in service was not warranted under 38 U.S.C. § 353 (1988). *Id.*

 The issue before this Court involves both a question of fact and a question of law. Whether the BVA's finding, that appellant's knee injury did not worsen in service, is erroneous, involves a question of fact. Whether the BVA correctly applied 38 U.S.C. § 353 and 38 C.F.R. § 3.306(a) (1990) (which define aggravation for compensation purposes) to those findings involves a question of law. We hold that the factual findings of the BVA as to the condition of the knee upon entry into service and upon separation are plausible in light of the record viewed in its entirety and are not clearly erroneous. We also hold that the BVA did not err in applying the definition of "aggravation in service" under 38 U.S.C. § 353 and 38 C.F.R. § 3.306(a) to the facts of the case. Therefore, the Court affirms the decision of the BVA.

## BACKGROUND

Appellant served in the U.S. Army from July 22, 1952, to July 13, 1954, with wartime duty in Korea. One month prior to his induction into the service, appellant injured his right knee while at work as a carpenter's apprentice. He was hospitalized for one week and placed in traction. On appellant's induction exam report, dated July 22, 1952, a "trick" right knee was noted. The report also stated there was

"No evidence of quadriceps atrophy or instability of ligaments. Some voluntary tension to movements."

Appellant's service records show he was hospitalized for knee problems soon after entry into the Army. He was treated again in October 1952, for knee discomfort and a click upon walking. An internal derangement of the right knee, with possible torn cartilage was diagnosed at that time. Appellant was placed on a light duty profile for eight weeks.

In November 1952, he was reevaluated at the U.S. Army Hospital Outpatient Service, Fort Dix, New Jersey. Internal derangement and possible torn cartilage was again noted, however, these defects were considered temporary by the medical officers. In February 1953, appellant was treated at Camp Drake Dispensary. Subsequent to this treatment, he was seen on four other occasions in 1953 for a painful and swollen right knee or for orthopedic evaluation. The orthopedic evaluations, which can be summarized, noted frequent swelling and locking of the right knee, but no effusion, atrophy or instability. The joint spaces were clear, no bony pathology was seen, and weight loss was recommended. A "normal profile" for the knee was given by his examiners.

Appellant's discharge exam of July 12, 1954, revealed he was treated in 1954 as an outpatient in a Korean Evacuation Army Hospital for a "trick" right knee. In addition, the discharge exam report noted possible derangement of the knee, and that appellant was still "bothered with [a] trick right knee." The report further stated there were "[n]o serious injuries, operations or diseases EPTE" (existing prior to entry); it also reveals, by comparison with his entry exam, that appellant had gained weight during service.

On July 22, 1954, appellant filed a claim with the VA for entitlement to service connection for the "trick" right knee. In that claim, appellant noted three occasions in which he had been treated for knee problems while in service: at Fort Dix and twice in Korea. The VA requested information from the Army, including service medical records, for these particular locations. No additional medical records were found. In August 1954, the VA conducted a medical exam of appellant's right knee pursuant to the claim.

The VA exam found the knee to be clinically normal. The examiner heard no crepitation at the knee, nor was any felt on motion; no quadriceps or calf atrophy was noted. The radiographic report revealed "segmentation of the tuberculum tibiae as a result of old, healed osteochondritis.... Bone and joint structures otherwise are within normal limits." The VA denied his claim on October 14, 1954, finding that the knee condition pre-existed service: "In the absence of a superimposed injury or sufficient knee pathology over and above the degree existing at time of induction, service connection either by direct occurrence or aggravation is not established."

Twenty-four years later appellant reopened his claim submitting in support private medical records which showed treatment for chondromalacia (abnormal softness of cartilage) of the knee in 1977. The record reveals appellant underwent surgery on the knee in December 1978; it is, however, unclear whether those surgical and hospitalization records were before the VA when it rendered its decision. The rating decision, dated January 2, 1979, denied service connection, stating that the evidence did not show the knee injury was "actually aggravated by service": "The first VA exam failed to indicate any evidence of a chronic knee condition. The medical evidence covering the past year does not support the contention that the veteran's knee injury was aggravated by service." The VA also noted that chondromalacia was diagnosed in the initial 1952 injury, based upon records dating from 1952 received by the VA pursuant to the 1978 claim; however, those documents are not in the record before this Court. The prior rating decision of October 14, 1954, denying service connection was upheld.

In May 1989, appellant once again reopened his claim. The evidence considered by the VA included private medical records dated December 1978, showing surgery for

a torn medial meniscus of the right knee. The VA also considered a letter from appellant's physician to a life insurance company dated July 1979. In that letter, the physician stated that appellant "should seek employment not requiring climbing ladders or working on scaffolding. I think this will be an indefinite restriction unless he loses a great deal of weight." On the surgical records his physician indicated that appellant sought treatment for knee pain which "developed after he had done a great deal of activity going up and down scaffolding as part of his work." On his claim form dated May 1, 1989, appellant indicated a history of "chondromalacia (patellafemoral) 1952 and succeeding through current date" and noted that "Social Security awarded total and permanent disability [in] January, 1986." His claim was again denied. At a hearing held on September 26, 1989, appellant maintained that he was not placed on light duty upon his return to the unit as prescribed by his in-service physicians. Instead, he was required by his commanding officers to participate in long marches and perform all his regular duties. This, appellant asserts, was the cause of his purported in-service aggravation.

The resulting decision of the hearing officer continued the denial of appellant's claim on the grounds that, although he had been treated for the knee condition while in service, the overall evidence did not show aggravation in service. The hearing officer noted the fact that there was injury to the knee prior to service and no evidence of a new injury to the knee in service.

Appellant appealed the denial to the BVA, which denied his claim because it found the knee condition was the same upon entry as upon separation from service and thus was not aggravated in service. *William F. Hunt, Jr.,* loc. no. 007992, at 6.

## ANALYSIS

### I.

■ This Court is directed to review factual determinations by the BVA under the "clearly erroneous" standard of 38 U.S.C. § 4061(a)(4) (1988). In *Gilbert v. Derwin-* *ski,* 1 Vet.App. 49, 52 (1990), the Court stated that it is not the function of this Court "to decide whether a veteran was injured or whether any such injury occurred in or was aggravated during military service." Rather, the Court must determine whether a factual determination of the BVA is clear error. *Id.* A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gilbert,* at 52 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Furthermore, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it...." *Gilbert,* at 52 (quoting *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949)).

■ In this case, the BVA found that although the right knee was "intermittently symptomatic with activity during service," the knee condition did not increase in severity during service. *William F. Hunt, Jr.,* loc no. 007992, at 6. Although several in-service diagnoses noted pain and swelling, possible torn cartilage, an unstable right knee and possible internal derangement, those defects were considered temporary by appellant's medical officers. Upon separation, no permanent injury was noted, only "a trick right knee"—the same injury appellant claimed upon entry into service. The record reveals no serious injuries or accidents involving the knee, nor any permanent damage, during service. In fact, the record is clear that several in-service medical officers had noted essentially a normal knee with only temporary defects during service. It is also notable that after leaving the Army, and in the twenty-four years between filing his first claim and his second claim, appellant was able to hold a job in the construction industry installing ceiling lighting. His position required frequent climbing up and down scaffolding or ladders. After a review of the entire evidence of record, this Court concludes that the BVA findings were plausible.

## II.

The second issue which we must address is whether the BVA correctly applied the law, 38 U.S.C. § 353 and 38 C.F.R. § 3.306(a), to its findings of fact. Those provisions define "aggravation in service" for purposes of awarding compensation under 38 U.S.C. § 310 (1988).

The BVA found that temporary flare-ups of the knee condition were insufficient to be considered "aggravation in service" under 38 U.S.C. § 353. The task before the Court is to determine, in effect, whether temporary "flare-ups" not resulting in overall worsening of appellant's condition during service constitutes "aggravated in service."

38 U.S.C. § 353 defines "aggravation in service" by stating: "A preexisting injury or disease will be considered to have been aggravated by active ... service, where there is an *increase in disability during such service,* unless there is a specific finding that the increase in disability is due to the natural progress of the disease." (Emphasis added). The regulation is identical in its wording. *See* 38 C.F.R. § 3.306(a).

▪ As a preliminary point, we note that clear and convincing evidence is required to rebut the presumption of aggravation in service where the pre-service disability *underwent an increase in severity* during wartime service. 38 C.F.R. § 3.306(b) (1990). *See Akins v. Derwinski,* 1 Vet.App. 228, 231 (1991). However, because the knee *condition* did not undergo an increase in severity, we find that appellant is not entitled to the presumption. *Id.* While there was temporary worsening of *symptoms,* the condition itself, which lent itself to flare-ups, did not worsen. In short, the disability remained unaffected by these flare-ups.

▪ As the Supreme Court has "repeatedly noted, 'the starting point for interpreting a statute is the language of the statute itself.' " *Hallstrom v. Tillamook County,* 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania,*

*Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). From an examination of the language of the statute, and in view of the overall statutory and regulatory scheme, it is clear that aggravation in service is based upon a worsening of the pre-service condition to the extent that a veteran's average earnings capacity has been diminished.

Title 38 of the United States Code, section 353, states that an injury will be considered aggravated in service when there is an "increase in disability." The term, "disability", as contemplated by the VA regulations, means "impairment in earning capacity resulting from such diseases and injuries and their residual conditions...." 38 C.F.R. § 4.1 (1990). This definition comports with the everyday understanding of the term, "disability," which is defined in *Webster's Ninth New Collegiate Dictionary* 359 (9th ed. 1990), as an "inability to pursue an occupation because of physical or mental impairment."

Such a definition of "disability" follows the overall statutory and regulatory purpose of the veterans compensation law. This purpose is reflected in the ratings system, which rates different mental and physical maladies based upon diminished earning capacity. The United States pays compensation to veterans when they have, in honorable service to their nation, suffered a loss that is reflected in the decreased ability to earn a living for themselves and their families. Title 38 of the Code of Federal Regulations, section 4.1 states:

> This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate

to the severity of the several grades of disability.

Hence, although "disability" is not defined by the statute for compensation purposes, the regulatory definition adopted is a reasonable one.

 Appellant contends that the intermittent flare-ups during service of the knee condition are sufficient to be considered aggravation in service. Appellant argues that the knee did not have an opportunity to heal and was severely aggravated because appellant's commanding officers required him to perform all his normal duties despite the light duty profile indicated by the medical officers. Because of his treatment in service, appellant contends he was rendered unable to continue in his civilian occupation, as reflected in the physician's statement of July 1979, that he should seek work not involving climbing up and down scaffolding. Appellant also argues that his "trick" knee was aggravated by his overweight condition in service, which the Army medical officers helped worsen by not assisting him to reduce weight.

The Court rejects these arguments. First, as we have noted above, there simply was no evidence showing the knee condition worsened during service relative to the pre-service injury. The BVA's plausible finding as to this issue is dispositive for the reasons noted, *supra.* Second, appellant worked climbing ladders and scaffolding for twenty-five years, notwithstanding his overweight condition, in the same industry in which he was employed prior to service.

Given the plain meaning of 38 U.S.C. § 353, and the purposes of the veterans disability laws, we hold that temporary or intermittent flare-ups during service of a preexisting injury or disease are not sufficient to be considered "aggravation in service" unless the underlying condition, as contrasted to symptoms, is worsened.

The BVA was not clearly erroneous in its finding that the knee condition did not worsen in service, and also did not err in applying the provisions of 38 U.S.C. § 353 and 38 C.F.R. § 3.306(a). Therefore, we AFFIRM the decision of the BVA.