# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-2157

LARRY M. WARD, APPELLANT,

AND

NO. 17-1204

GABRIEL S. NEAL, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 1, 2019                    Decided June 14, 2019)

*Casey Connelly* and *Laurel Fresquez*, of Jamaica Plain, Massachusetts, argued for the appellants.[1] *Lavinia A. Derr* and *Ronen Z. Morris*, both of Washington, D.C., argued for the appellee.

*Alyce E. Galoski*, of Providence, Rhode Island, for appellant Ward.

*Emma L. Peterson* and *Zachary M. Stolz*, of Providence, Rhode Island, and *Daniel L. Nagin* and *Elizabeth R. Gwin*, of Jamaica Plain, Massachusetts, were on brief for appellant Neal.

*Meghan Flanz*, Interim General Counsel, with whom *Mary Ann Flynn*, Chief Counsel; *James B. Cowden*, Deputy Chief Counsel; and *Lavinia A. Derr*, Appellate Attorney, all of Washington, D.C., were on brief for the appellee in No. 16-2157. *James A. Byrne*, General Counsel, with whom *Mary Ann Flynn*, Chief Counsel; *Richard Daley*, Deputy Chief Counsel; and *Stuart Anderson*, Appellate Attorney, all of Washington, D.C., were on brief for the appellee in No. 17-1204.

Before DAVIS, *Chief Judge*, and PIETSCH and GREENBERG, *Judges*.

DAVIS, *Chief Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed an opinion concurring in part and dissenting in part.

---

[1] These students are members of the Veterans Legal Clinic of the Legal Services Center of Harvard Law School, which is co-counsel for the appellants. The Court expresses its appreciation for their contribution to the Court's consideration of this matter.

DAVIS, *Chief Judge*: Both cases in this consolidated appeal involve the correct legal standard for assessing an increase in disability of a non-service-connected condition "proximately due to or the result of a service-connected disability"[2] in a secondary-service-connection context. The merits issue for panel consideration arises from Board instructions to VA examiners in both cases that "aggravation" of a non-service-connected condition required a "permanent worsening" of that secondary condition.

The Secretary apparently imported this requirement from law pertaining to the presumption of aggravation for conditions preexisting service.[3] The Secretary has incorporated the "permanent worsening" requirement into the *VA Adjudication Procedures Manual*, effective November 30, 2017.[4] The Court concludes that the Secretary's imposition of the "permanent worsening" standard is an impermissible attempt to add requirements that appear in neither the enabling statute[5] nor in the implementing regulation[6] for secondary service connection. Therefore, the Court will set aside the Board decisions in the appeals of both Mr. Ward and Mr. Neal, and remand their secondary-service-connection claims for additional development and readjudication under the proper legal standard.

Additionally, there is a motion before the Court to certify a class of "veterans who are or will be subject to the Secretary's unlawful 'permanent worsening' standard for deciding whether a service-connected disability has aggravated a secondary disability."[7] Because this is a precedential opinion, which should have full effect throughout VA, the Court will deny the class certification motion at this time.

## I. BACKGROUND

U.S. Navy veteran Larry M. Ward is service connected for femur and knee disabilities resulting from an in-service accident. His knee condition eventuated in a total knee replacement.

---

[2] 38 C.F.R. § 3.310(b) (2018).

[3] *See* 38 U.S.C. § 1153; 38 C.F.R. § 3.306 (2018).

[4] VA ADJUDICATION PROCEDURES MANUAL (M21-1), pt. III, subpt. iv, ch. 6, § B(5)(a).

[5] *See* 38 U.S.C. § 1110.

[6] *See* 38 C.F.R. § 3.310.

[7] Motion for Class Certification at 1.

He now seeks service connection for a bilateral hip condition that he believes has resulted, at least in part, from stress caused by his service-connected disabilities.

U.S. Army veteran Gabriel S. Neal is service connected for a left knee disability that has resulted in several surgeries, also culminating in a full knee replacement. He now seeks service connection for a low back disability that he believes has resulted from favoring his service-connected left knee.[8]

The records in both cases raise an identical issue on appeal. In Mr. Ward's case, a Board remand instructed VA to

> [o]btain a VA medical opinion as to whether it is at least as likely as not (50 percent or greater probability) that the [v]eteran's degenerative joint disease of the hips was caused or aggravated (*permanently increased in severity* beyond the natural progress of the disorder) by the service-connected right knee total arthroplasty, left femur fracture residuals and/or right foot nerve damage with loss of motion of the toes with chronic pain.[9]

In Mr. Neal's case the Board asked the examiner: "Is it at least as likely as not (50 percent or greater) that the [v]eteran's right knee disorder and/or low back disorder were aggravated (i.e., *permanently made worse* beyond the natural progression of the disability) by the [v]eteran's service[-]connected left knee disability."[10]

At the core of the merits dispute in this consolidated case is a statement from an en banc decision of this Court in *Allen v. Brown*.[11] While discussing the law of secondary service connection, the *Allen* Court said the following:

> (Note: Unless otherwise indicated, the Court will use the terms "aggravation" and "aggravated" as general terms referring to *any increase in disability*. This is to be distinguished from the more specific form of the term "aggravation" as defined in 38 U.S.C. § 1153 . . . and 38 C.F.R. § 3.306(a) (1994), which authorize compensation for an increase in disability resulting from aggravation during service of an injury or disease that existed before service.)[12]

---

[8] Mr. Neal initially sought secondary service connection for a right knee condition as well as the lower back condition. Though the record is unclear on this point, Mr. Neal was apparently awarded service connection for the right knee disability. A VA examination report linked the right knee disability to the left knee disability, and the most recent Board decisions and Supplemental Statements of the Case (SSOCs) list only service connection for the lower back condition as an issue.

[9] Ward Record (R.) at 98 (restatement of examination request in May 2014 VA examination report) (emphasis added); *see also* Ward R. at 1297 (Feb. 2014 Board remand containing identical language).

[10] Neal R. at 2299-2300 (emphasis added).

[11] 7 Vet.App. 439 (1995) (en banc).

[12] *Id.* at 445 (emphasis added).

On October 24, 2017, before Mr. Ward's and Mr. Neal's cases were consolidated, the Court issued a supplemental briefing order that read, in relevant part:

1) Do *Donnellan* [*v. Shinseki*, 24 Vet.App. 167 (2010)] and *Davis* [*v. Principi*, 276 F.3d 1341 (Fed. Cir. 2003)] apply to an analysis under § 3.310(b) in view of *Allen*?

2) In *Hunt v. Derwinski*, 1 Vet.App. 292, 296-97 (1991) the Court indicated that 38 U.S.C. § 353, the predecessor statute to section 1153, provided the definition of aggravation for § 3.310, and that this standard required permanent worsening of disability. Is *Hunt* good law on the definition of aggravation for § 3.310 cases in view of *Allen*?

3) How, if at all, should *McClain v. Nicholson*, 21 Vet.App. 319, 321 (2007) (disability is compensable if present at filing or at any time during pendency of claim, even if it resolves thereafter) influence the Court's consideration of whether aggravation under § 3.310(b) requires a permanent increase in disability?[13]

Because of timing, the Court has a response to the supplemental briefing questions only on behalf of Mr. Ward. Because he prevails in this matter, however, there is no prejudice in proceeding without related briefing from Mr. Neal.

## II. PARTIES' ARGUMENTS

### A. The appellants argue that the "permanent worsening" standard is inconsistent with the governing statute as construed in *Allen* and with the implementing regulation.

Both Mr. Ward and Mr. Neal argue that the "permanent worsening" standard is contrary to controlling law. They cite *Allen* to the effect that a veteran is entitled to compensation for "*any additional impairment* of earning capacity resulting from a service-connected condition, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition."[14] They also point to § 3.310(b), the implementing regulation, which states that "[*a*]*ny increase in severity* of a non[-]service-connected disease or injury that is

---

[13]*Ward v. Shinseki*, No. 16-2157 (unpublished order at 2), https// efiling. uscourts. cavc. gov/ cmecf/ servlet/ TransportRoom.

[14] *Allen*, 7 Vet.App. at 448 (emphasis added).

proximately due to or the result of a service-connected disease or injury . . . will be service connected."[15]

Mr. Ward distinguishes his case from *Donnellan* and *Davis* on the basis that those cases pertain to service connection for in-service aggravation of a preexisting injury, whereas § 3.310(b) deals with aggravation of a non-service-connected condition by a service-connected disability, which is necessarily a postservice occurrence. Mr. Ward further points out that the statutory authority listed for § 3.310(b) is not section 1153 containing the presumption of aggravation, but instead sections 1110 and 1131, which require compensation for any disability "*resulting from* personal injury suffered . . . in line of duty."[16]

As to the continuing relevance of *Hunt*, Mr. Ward notes that this case preceded both *Allen* and a 2006 revision of § 3.310(b). *Allen* added the language distinguishing aggravation in a secondary-service-connection context from that employed for purposes of section 353, the predecessor to section 1153. The revision to § 3.130(b) added the language "any increase in severity." Mr. Ward further argues that *Hunt* primarily concerns additional disability required for aggravation of a condition preexisting service, and reiterates his argument that § 3.310(b) derives from a different statute than the presumption of aggravation.

Finally, Mr. Ward argues that the reasoning of *McClain*,[17] which states that a disability is compensable if it is present at filing or during the pendency of the claim, even if it subsequently resolves, should dictate that the increase in disability of a non-service-connected disability under § 3.310 need not be permanent. Essentially, he argues that the "permanent worsening" standard is inconsistent with the Court's staged-ratings practice.

### B. The Secretary argues from the content of § 3.310(b) that the "permanent worsening" standard is consistent with *Allen*.

The Secretary argues that Mr. Ward's argument is based on a "selective and incomplete reading of 38 C.F.R. § 3.310(b)."[18] His argument emphasizes another passage in *Allen*:

> [P]ursuant to [section] 1110 and § 3.310(a), when aggravation of a veteran's non-service-connected condition is proximately due to or the result of a service-

---

[15] 38 C.F.R. § 3.310(b) (2018) (emphasis added).

[16] 38 U.S.C. §§ 1110, 1131 (emphasis added).

[17] 21 Vet.App. at 321.

[18] Secretary's Response to Supplemental Briefing Order at 2.

connected condition, such veteran shall be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. [19] *Cf.* 38 C.F.R. § 3.322 (1994) (in compensating for aggravation of a preservice disability by active service, it "is necessary to deduct from the present evaluation the degree, if ascertainable, of the disability existing at the time of entrance into active service, in terms of the rating schedule ... ").[20]

At oral argument, the Secretary conceded that the term "permanent worsening" appears neither in section 1110 nor in the implementing regulation, § 3.310. He nevertheless argued that the "permanent worsening" standard inheres in the requirement that only the incremental increase in disability due to the service-connected condition is compensable. He asserts that any increase in disability must be measurable to compare it with the baseline severity of the non-service-connected condition. At oral argument, the Secretary defined "permanence" as "measurability."[21]

The Secretary further argues that the reasoning of *Donnellan* and *Davis* applies equally well to the secondary-service-connection context. The Secretary quotes *Davis*, to the effect that "[a] corollary to the Secretary's usage is that an increase in disability must consist of worsening of the enduring disability and not merely a temporary flare-up of symptoms associated with the condition causing the disability."[22] The Secretary asserts that, like section 1153 and § 3.306, § 3.310(b) allows compensation only for the incremental disability above an established baseline, concluding that the increased disability must be measurable, and therefore permanent. He also advocates that the term "aggravation" should be consistently construed throughout all sections of the veterans benefits statute.

The Secretary also takes the position that *Hunt* remains good law. He essentially argues that *Allen* stipulates that compensation may be paid only for the incremental increase in disability of the non-service-connected condition, and asserts that this requirement implies an enduring, as opposed to temporary, increase in disability.

---

[19] The Secretary's regulation requires "medical evidence created before the onset of aggravation or by the earliest medical evidence created at any time between the onset of aggravation and the receipt of medical evidence establishing the current level of severity of the nonservice-connected disease or injury." 38 C.F.R. § 3.310(b). The Secretary's briefing makes it clear that he assigns the burden of production of such evidence, as well as evidence pertaining to the natural progress of the non-service-connected condition, to the veteran. The panel takes no position on the validity of these regulatory requirements or the Secretary's assignment of the burden of proof.

[20] *Allen*, 7 Vet.App. at 448.

[21] Oral Argument at 34:36, *Ward v. Wilkie*, U.S. Vet. App. No. 16-2157 (consolidated with *Neal v. Wilkie*) (oral argument held Feb. 1, 2019), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

[22] *Davis*, 276 F.3d at 1344.

## III. ANALYSIS

### A. Cases construing "aggravation" with respect to section 1153 have no relevance in the secondary-service-connection context.

The Secretary argues that the Court should construe the term "aggravation" in the same manner as it was construed in cases involving different provisions of Chapter 11 of the veterans statute (sections 101(24), 1153), invoking the consistent-usage canon. The flaw in this reasoning is that the term "aggravation" is not contained in the portions of 38 U.S.C. §§ 1110 and 1131, from which secondary service connection derives.

As *Allen* makes clear, secondary service connection derives, not from section 1153, but from sections 1110 and 1131,[23] which read, in relevant part:

> For *disability resulting from* personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in the line of duty . . . the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation as provided in this subchapter.[24]

The only references to "aggravation" in these statutes pertain to a preexisting injury that is aggravated in service under the presumption of aggravation, section 1153. Thus, the statutory phrase to be construed with respect to secondary service connection of non-service-connected conditions is not "aggravated" or "aggravation," but "disability resulting from [service-connected conditions]."

Though the *Allen* Court might have avoided confusion by employing another term, it was careful to define a category of "aggravation" that differs from that pertaining to section 1153. The Court stated that it was defining a more general meaning encompassing "*any increase in disability*."[25] The Court was clearly construing the statutory phrase "disability resulting from," and concluded that this phrase encompassed "any additional impairment in earning capacity resulting from an already service-connected condition." [26] This concept is incorporated into the

---

[23] *See Allen*, 7 Vet.App. at 446.

[24] 38 U.S.C. §§ 1110, 1131 (emphasis added).

[25] *See supra* note 12 and accompanying text.

[26] *See Allen*, 7 Vet.App. at 448.

implementing regulation, § 3.310(b), which provides that "[a]ny increase in severity" of a non-service-connected injury or disease will be compensated.[27]

Though it is settled that "aggravation" for purposes of the presumption of aggravation (section 1153) requires a permanent increase in severity,[28] it does not follow that permanent worsening is a requirement for secondary service connection of a non-service-connected injury or disease under sections 1110 and 1131. The *Allen* Court decided that compensation was due for any incremental increase in disability—any additional impairment of earning capacity—in non-service-connected disabilities resulting from service-connected conditions, above the degree of disability existing before the increase—regardless of its permanence. Thus, the Secretary's reliance on cases construing section 1153 is misplaced.

### B. Providing compensation for only the incremental disability attributable to the service-connected condition does not require that the increase in disability must be permanent.

Here, the Secretary concedes that the phrase "permanent worsening" appears neither in the governing statutes, sections 1110 and 1131, nor in § 3.310, the implementing regulation. As discussed above, sections 1110 and 1131 focus primarily on disability resulting from in-service injuries or diseases, and only secondarily on aggravation of a preexisting injury, which in turn, is governed by section 1153.

The Secretary nevertheless defends his importation of the "permanent worsening" standard into the secondary-service-connection analysis by pointing to language in *Allen* that compensation is "for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation."[29] He reasons that any incremental increase in disability must be measurable, and to be measurable, the incremental disability must be permanent.

---

[27] *See* 38 C.F.R. § 3.310(b).

[28] Unlike sections 1110 and 1131, section 1153 includes the concept of aggravation:
> A preexisting injury or disease will be considered to have been *aggravated* by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 1153 (emphasis added).

[29] *Allen*, 7 Vet.App. at 448.

The Court notes that the Secretary's regulation, § 3.310, is not an interpretation of a statute; it is based on the Secretary's perception of what this Court required in *Allen* and *Tobin*.[30] Thus, the regulation is not entitled to *Chevron* deference.[31] Furthermore, because the "permanent worsening" standard admittedly has no basis in the express language of the regulation, the Secretary's interpretation of his regulation to that effect is not entitled to *Auer* deference.[32]

The Secretary may not add restrictions to a regulation where they do not exist, "because, in doing so, the Board imposes a greater burden on a claimant than the law does."[33] Thus, the Court must examine the Secretary's argument that the "permanent worsening" standard logically proceeds from a plain reading of the requirements of *Allen*.

As discussed above, *Allen* interpreted the governing statutes to provide that "*any*" increase in disability of a non-service-connected condition is compensable. Conditions may wax and wane in severity, but nevertheless be medically ascertainable as an incremental increase in disability, and hence compensable. *Allen* also defined "disability" as "the impairment of earning capacity due to disease, injury, or defect."[34]

Medically determined increases in disability need not be "permanent," in the ordinary sense of being discernible at all times. Particularly in musculoskeletal disabilities, such as those involved in this consolidated appeal, it is well settled that an examiner must evaluate whether additional disability arises during flareups.[35] Moreover, as illustrated by *McClain*, an incremental increase in disability may be medically determined before the abatement of that disability if it was present sometime during the adjudication of a claim.

The Court concludes that the "permanent worsening" standard has no application in cases involving an incremental increase in disability of a non-service-connected condition proximately

---

[30] *See generally* 71 Fed. Reg. 52,744 et seq. (Sept. 7, 2006).

[31] *See Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984).

[32] *See Auer v. Robbins*, 519 U.S. 452 (1997).

[33] *English v. Wilke*, 30 Vet.App. 347, 353 (2018); *see also* Ortiz-*Valles v. McDonald*, 28 Vet.App. 65, 71 (2016).

[34] *Allen*, 7 Vet.App. at 448.

[35] *See Sharp v. Shulkin*, 29 Vet.App. 26, 34 (2017); *Mitchell v. Shinseki*, 25 Vet.App. 32, 44 (2011); *DeLuca v. Brown*, 8 Vet.App. 202 (1995).

due to or the result of a service-connected disease or injury. It is worth noting that the Secretary has admitted as much in several nonprecedential cases. [36]

Furthermore, to the extent that the Secretary employs the word "measurable" in its primary meaning, requiring a numerically quantifiable assessment, that requirement is also not present in the governing statutes or in the implementing regulation. There are other ways of ascertaining the incremental increase in disability that do not require numerical quantification. The disability ratings schedule is replete with conditions that are not evaluated by any numerical measurement.[37]

Cases before this Court have required medical determinations for ascertaining the incremental increase in disability that may not be subject to numerical quantification, but must be evaluated by a qualified medical professional based on the totality of symptoms. In *El-Amin v. Shinseki*,[38] the Court remanded the case for a determination of whether and to what degree the veteran's service-connected PTSD may have "aggravated" his alcoholism. *Allen* itself remanded for VA to determine whether a service-connected right knee arthritis increased the veteran's disability of arthritis in his left knee and hip. In *Tobin v. Derwinski*,[39] discussed in the *Allen* case,[40] the Court remanded a claim for left knee arthritis, in part for the Board to consider whether that disability was increased by the veteran's service-connected cavus condition of the left foot.

On remand from *Allen* and *Tobin*, the medical determination of incremental disability might well have involved incremental disability due to flareups. If an examination is not conducted during a flareup, to ascertain the incremental increase in disability, the examiner must estimate the additional functional loss from the described symptoms of the flareup.[41] Further, the incremental disability resulting from flareups or repetitive motion should be expressed, *if possible*, in additional loss of range of motion. If the additional disability cannot be quantified, however, it is nevertheless compensable. The Secretary suggests no reason that such flare-ups should be treated differently

---

[36]*Bohmer v. Shulkin*, U.S Vet. App. No. 17-0191 (Joint Motion for Partial Remand Nov. 1, 2017); *Schindel v. Shulkin*, U.S. Vet. App. No. 16-4201 (Joint Motion for Remand Oct. 24, 2017); *Mickelson v. Shinseki*, No. 16-1300, 2017 WL 3224670 (Vet. App. July 31, 2017) (mem. dec.).

[37] *See, e.g.,* 38 C.F.R. § 4.124a, Diagnostic Codes 8510-8513 (incomplete paralysis in peripheral nerve injuries evaluated according to whether it is subjectively "mild," "moderate," or "severe"); *see also* 38 C.F.R. § 4.130 (2018) (mental disabilities rated according to collective symptoms involving no numerical assessments).

[38] 26 Vet.App. 136 (2013).

[39] 2 Vet.App. 34 (1991).

[40] *Allen*, 7 Vet.App. at 443-44.

[41] *Sharp*, 29 Vet.App. at 34.

when they are caused by a service-connected disease or injury after service, as opposed to an injury or disease incurred in service.

Finally, the U.S. Court of Appeals for the Federal Circuit has recently held that pain alone can constitute a compensable disability, at least in musculoskeletal claims.[42] So, incremental pain might constitute an increase in disability of a non-service-connected condition, and by its very nature, pain cannot be objectively measured.

The Court does not regard *Hunt* as binding authority on the permanent-worsening issue. *Hunt* involved a Board denial of service connection for aggravation of a preexisting knee condition under 38 U.S.C. § 353 (the predecessor to section 1153). The Court stated that the legal issue in the case was whether the Board had properly applied the definition of "aggravation" in section 353 (the presumption of aggravation) and its implementing regulation 38 C.F.R. § 3.306. The Court's pronouncement that "[t]hese provisions [section 353 and § 3.306] define 'aggravation in service' for purposes of awarding compensation under 38 U.S.C. § 310 (1988) [sic]"[43] is plainly dicta. To the extent that the *Hunt* Court may have intended a binding interpretation of § 3.310, as it existed at that time, that interpretation was effectively overruled by the en banc *Allen* decision, which set forth a different definition.

For reasons discussed above, the Court rejects the Secretary's contention that the "permanent worsening" standard inheres in either the language of *Allen* or in the Secretary's regulation. The Court will therefore set aside the Board decisions of appellants Ward and Neal, and remand the secondary-service-connection claims in those cases for readjudication under the appropriate legal standard.

However, the Court will deny the motion for class certification. In denying the class certification motion at this time, the Court expects the VA to take steps to immediately implement this precedential decision throughout the VA system and apply it to all cases pending before VA where the appropriate legal standard for assessing the incremental increase in disability of a non-service connected disability resulting from a service connected disability is relevant.

---

[42] *Saunders v. Wilkie*, 886 F.3d 1356 (2018).

[43] *Hunt*, 1 Vet.App. at 296. Mr. Ward notes that there was no section 310 in the statute until 1991, and that provision relates to chief information officers. It is assumed that the Court's intended reference was to § 3.310. That provision, however, does not discuss "aggravation in service."

# IV. CONCLUSION

On consideration of the foregoing, the April 12, 2016, Board decision in the appeal of Larry M. Ward, and the March 15, 2017, Board decision in the appeal of Gabriel S. Neal, are SET ASIDE and Mr. Ward's and Mr. Neal's secondary-service-connection claims are REMANDED for readjudication consistent with this decision. The motion for class certification is denied.

GREENBERG, *Judge*, concurring in part and dissenting in part: While I concur on the merits of the decision with my esteemed colleagues with regard to the veterans here, I could not agree to leave the countless thousands of veterans in this class to the fate of a Secretary and Department as arbitrary and capricious as these. Congress created this Court decades ago to correct and vitiate unjust actions and policies within our specific jurisdiction. We were wrong to deny class action certification power for 30 years and we are still wrong in refusing to exercise it here. I would have certified the class now. "This petition raises important questions about how the Government carries out its obligations to our veterans." *Mathis v. Shulkin*, 137 S. Ct. 1994, 1994 (2017) (Sotomayor, J., dissenting). The issue of systemic VA delay "is of much significance to many today and, respectfully, it is worthy of this Court's attention." *Id.* at 1995 (Gorsuch, J., dissenting). Congress intended a prompt decision in all matters either by a single Judge or in panels of no fewer than three Judges. This Court has a special obligation to a class of litigants especially favored by Congress. We should decide all matters when ready and never decline to do so because similar or even identical issues are pending elsewhere. The parties have their remedies provided by our procedures, Congress, the Federal Circuit, and the Supreme Court. We have been given broad direction to "use class actions to promote efficiency, consistency, and fairness in its decisions" through our authority to issue writs. *Monk v. Shulkin*, 855 F.3d 1312, 1321 (Fed. Cir. 2017) (Reyna, J.). I have long held the view that we had class, aggregate, or group certification powers. *See Monk v. Wilkie*, 30 Vet.App. 167, 200 (Aug. 23, 2018) (Greenberg, J., dissenting). There is no need to wait any longer to certify the class in this case as waiting merely delays the implementation of the Court's holding to a broader class of veterans and goes against the principles the Court is encouraged to promote and protect.

While I concur here, I agree with Justice Brennan, that "[d]issent for its own sake has no value . . . . However, where significant and deeply held disagreement exists, members of the Court have a responsibility to articulate it. . . . Unanimity is not in and of itself a judicial virtue. . . .

Judges have no power to *declare* law. Courts *derive* legal principles and have a duty to explain *why* and *how* a given rule has come to be. . . . [Judges] are forced by a dissent to reconsider the fundamental questions and rethink the result . . . . In my judgment . . . the unique interpretive role of [our Court] with respect to the Constitution [and our authority] demands some flexibility with respect to the call of stare decisis. . . . [We should not be] captive to the anachronistic view of long-gone generations. . . . The right to dissent is one of the great and cherished freedoms by reasons of the excellent accident of our American births." William J. Brennan, *In Defense of Dissents*, 37 HASTINGS L.J. 427, 427-35 (1985) (emphasis in original). Holding the matter in abeyance now does nothing but delay a deserving result for veterans. For the foregoing reason, I respectfully concur.