## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 23-7775

KAREN R. SHORETTE,                                                    PETITIONER,

    V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS,                                       RESPONDENT.

Before BARTLEY, *Chief Judge*, and MEREDITH and LAURER, *Judges*.

### O R D E R

Before the Court is Karen R. Shorette's petition for extraordinary relief in the form of a writ of mandamus. As explained below, this is her second petition related to her husband's, Charles R. Shorette's, VA disability compensation, which has been managed and distributed through VA's fiduciary program since 2008.

### I. BACKGROUND

The petitioner has served as the veteran's legal guardian pursuant to an Indiana state court order since February 2009 and had served as his VA fiduciary from December 2008 to March 2018. As his VA fiduciary, she operated under an agreement that allocated in excess of $3,000 per month from the veteran's disability benefits to pay the family's expenses and provide for his dependents. However, in March 2018, VA suspended payment of the veteran's benefits after a psychologist at a VA medical center alleged that the petitioner had been misusing the veteran's funds. Although VA appointed a successor fiduciary for the veteran in November 2018, none of his benefits were allocated for his dependents and the family's expenses.

Nearly 3 years later, in March 2021, VA determined that it was wrong: the petitioner did not misuse the veteran's funds. Yet VA did nothing to restore her as fiduciary for her husband; VA ignored her appeal, as guardian of the veteran, of VA's appointment of a paid fiduciary and her concomitant removal as fiduciary; and despite repeated complaints, VA failed to ensure that VA's paid fiduciary was acting in the best interest of the beneficiary *and his dependents*.

VA's inaction prompted the petitioner, in April 2022, to seek this Court's intervention. She asked the Court to compel VA to (1) issue a decision regarding her entitlement to be reinstated as representative payee for Mr. Shorette, (2) address her complaints that his then-current fiduciary was violating a July 2010 fiduciary agreement in which VA approved monthly expenses to support the veteran's family, and (3) release the withheld funds. *See* Petition (Pet.) at 1-3, *Shorette v. McDonough*, U.S. Vet. App. No. 22-4698 (Apr. 18, 2022).

After the Court convened a panel and held oral argument, in August 2023, the Court granted the petition in part; the Court issued a writ compelling the Secretary to process the

petitioner's 2018 Notice of Disagreement (NOD) with VA's appointment of a paid fiduciary and concomitant removal of the veteran's legal guardian as his fiduciary. *See Shorette v. McDonough*, 36 Vet.App. 297 (2023) (per curiam order), *appeal dismissed*, No. 24-1175, 2024 WL 939850, at *1 (Fed. Cir. Mar. 5, 2024). The Court dismissed the part of her petition related to unpaid familial expenses from 2018 "because the petitioner ha[d] not demonstrated that VA's failure to act [wa]s frustrating the Court's prospective jurisdiction." *Id.* at 315.[1]

Two months later, the petitioner attempted to resolve the issue regarding familial expenses without having to return to the Court. In this regard, she made another request for VA to resume disbursing monthly funds for familial benefits and to release the funds withheld since 2018. Petitioner's Jan. 17, 2024, *Solze* Notice, Exhibit (Ex.) P. Of note, she reasserted that the current fiduciary "[wa]s violating the July 2010 fiduciary agreement in which VA approved monthly expenses in excess of $3000.00 to support the veteran's family"; that "there has been no response, much less corrective action, from . . . VA"; and that her complaints should have been more than adequate to notify "VA fiduciary program officials, if not the Secretary, of the wrongful withholding." *Id.*

In December 2023, the petitioner filed the instant petition because VA ignored her requests for the veteran's fiduciary file, still did not process her 2018 NOD, and despite the prior Court proceedings, did nothing to address her repeated complaints that the fiduciary had not been providing for the veteran's dependents since 2018. Pet. at 1-19; *see* Exs. A-H. Only after the Court ordered the Secretary to respond to the petition did VA release the veteran's fiduciary file and respond to the 2018 NOD. In that regard, the Indianapolis VA fiduciary hub manager, in January 2024, initiated a "[s]uccessor [i]nitial [a]ppointment" to make the petitioner Mr. Shorette's fiduciary. Secretary's Jan. 18, 2024, Response (Resp.) at 4; *see id.* at 2-4, Exs. 1-2.

Given those actions, the Secretary urges the Court to dismiss the petition in part and deny it in part. *Id.* at 4-8. Regarding the familial expenses, although he acknowledges that the petitioner made "assertions about expenses to VA," he asserts "that she has not alleged that she requested payment of any specific familial expense of the current fiduciary[,] nor has she submitted a misuse report to the fiduciary hub." *Id.* at 4. As support, the Secretary submits a report of general information, which indicates that the fiduciary denied any contact by the petitioner, and a declaration from an assistant coach at the fiduciary hub, stating that "there have been no . . . allegations of inappropriate or unacceptable actions received by the Indianapolis Fiduciary Hub against [VA's paid fiduciary]." *Id.*, Ex. 5; *see id.* at 4-5, Exs. 4-5. The Secretary further avers that it is the fiduciary, not VA, who is responsible for administering the veteran's funds and that the fiduciary retains discretion while fulfilling those duties. *Id.* at 6, n.6.

After the Court received additional *Solze* notices, on May 1, 2024, the Court ordered the parties to file memoranda of law addressing in part whether the petitioner's letters requesting reimbursement for familial expenses entitle her to a written decision from VA. In response, the Secretary asserts that "VA does not possess or control any past-due benefits of the [v]eteran

---

[1] The Court did "not opine on what recourse the petitioner may have at the Agency or whether she could have any recourse at the Court if the fiduciary [wa]s inappropriately withholding funds," but the Court noted that "nothing in th[e] order prevent[ed] the petitioner from attempting once more to have VA address this matter." *Shorette*, 36 Vet.App. at 315.

2

beneficiary"; "all payments have been made to a fiduciary pursuant to [38 U.S.C. §] 5502"; and "[i]t is the fiduciary who has the duty and responsibility to make payment decisions." Secretary's May 29, 2024, Memorandum of Law (MOL) at 2, 6.

The Secretary maintains that VA's initial collection of information about the beneficiary's monthly expenses and notice to the appointed fiduciary of those expenses "is not a mandate from VA to pay particular bills nor a limitation to pay only those bills." *Id.* at 6; *see id.* at 4-6. Instead, he contends that the notice is intended to make the fiduciary aware of estimated beneficiary expenses and to assist VA in its oversight responsibilities. *Id.* at 4-6.

Further, because "it is the fiduciary, not VA, who is to make decisions about the expenditure of the VA-issued funds under [the fiduciary's] control," the Secretary reports that, if needs are not being met, the appropriate process is to contact the fiduciary who is empowered to make those decisions pursuant to 38 C.F.R. § 13.140. *Id.* at 7-8. And if the fiduciary is not responsive, the Secretary asserts that the beneficiary may ask VA to remove that fiduciary. *Id.* Here, the Secretary reiterates his prior assertions that the petitioner did neither—she did not contact the fiduciary or complain to the fiduciary hub. *Id.* at 8-9. In sum, the Secretary asserts that VA's duties involve appointment, oversight, and removal of fiduciaries, and therefore "a statement of the information gathered in a letter is not a decision of the [A]gency about the provision of benefits[,] and a complaint about its content is not a request for a decision." *Id.* at 6; *see id.* at 9-10 (citing 38 C.F.R. §§ 13.10, 13.100, 13.280, 13.400, 13.410, and 13.500 (2023)).

The petitioner subsequently informed the Court that, in March 2024, VA determined that she and Mr. Shorette are "estranged" because they are not living together. Petitioner's June 17, 2024, *Solze* Notice at 1; *see* Declaration (Decl.) at ¶¶ 16, 19; Exs. B-D. She also reported that, because of this determination, VA concluded that it will not treat her as a "spouse fiduciary," and VA is instead requiring her to submit accountings and obtain a surety bond, obligations that are not normally required of spouse fiduciaries. Petitioner's June 17, 2024, *Solze* Notice at 1; *see* Decl. at ¶¶ 16, 19, 21, 23; *see also* Exs. B-D, F.

Because the petitioner and the veteran have been living apart since 2008 as a result of the veteran's disability and the petitioner acted as his fiduciary from 2008 to 2018 without VA previously considering them to be estranged, the Court ordered the Secretary to explain "[o]n what law, regulations, or other authority did the Secretary or the Fiduciary Program rely when determining that Mrs. Shorette is estranged from the veteran." *Shorette v. McDonough*, U.S. Vet. App. No. 23-7775 (July 18, 2024) (unpublished per curiam order), at 2. Additionally, given the Secretary's contention that VA does not possess the veteran's funds and that it is the fiduciary who makes decisions regarding expenditures, Secretary's May 29, 2024, MOL at 2, 6, the Court ordered the Secretary to inform the Court whether Mrs. Shorette, acting in her role as fiduciary, would require VA's permission to reimburse herself, as the veteran's dependent, for those expenses unpaid from 2018, *Shorette*, U.S. Vet. App. No. 23-7775 (July 18, 2024) (unpublished per curiam order), at 2.

In response, the Secretary submitted a declaration from a management and program analyst with the Pension and Fiduciary Service (P&F). Secretary's Aug. 8, 2024, Resp., Ex. 1. After outlining some of the events leading up to the petitioner's March 2024 appointment as a

"VA-appointed fiduciary," the analyst indicated that the VA field examiner erred when he documented estrangement as the reason to appoint the petitioner as a "VA-appointed fiduciary" rather than as a "spouse fiduciary." *Id.*, Decl. at ¶ 16. The analyst thus reported that "a new appointment is being coordinated with the [fiduciary] hub to reestablish Mrs. Shorette as the less restrictive spouse payee," but that the hub has 45 days to complete the appointment. *Id.* at ¶ 17.

Of significant import is the analyst's response to the Court's inquiry whether the petitioner acting in her role as fiduciary would require VA's permission to reimburse herself, as the veteran's dependent, for those expenses unpaid from 2018. *Id.* at ¶ 20. Contrary to earlier representations by the Secretary regarding the roles and responsibilities of VA and the fiduciary, the analyst responded as follows:

> **Yes, the fiduciary must provide evidence that reimbursement is warranted before VA will authorize a reimbursement of funds**. 38 C[.]F[.]R[.] [§] 13.140(b)(3) explicitly states that the fiduciary may not derive a personal financial benefit from management or use of the beneficiary's funds. As such, VA only authorizes fiduciaries to reimburse themselves when a beneficiary's expense is initially paid from their own funds and reimbursement is due.

*Id.* (emphasis added).

Further, despite the analyst's acknowledgment that VA suspended the veteran's benefits in March 2018 and the undisputed fact that neither VA nor the prior paid fiduciary provided any funds to care for the veteran's dependents for 6 years, the analyst remarked:

> [T]here is no . . . evidence that Mrs. Shorette used her own funds for familial expenses, and *a cause or need* for reimbursement has not been demonstrated. Outside of this court case, VA would generally *not approve* such reimbursement due to the lack of evidence that it is a true reimbursement and not an action taken for financial gain.

> VA notes that Mrs. Shorette has *not presented* VA with a figure or breakdown for the reimbursement being sought.

> . . . .

> As such, Mrs. Shorette would *need to specify* the intended amount she wishes to reimburse herself to ensure there [are] sufficient funds under management. VA notes concerns with depleting the [v]eteran's VA funds to reimburse the fiduciary for historical expenses without receiving any documentation or supporting *need*.

*Id.* (emphasis added).

Additionally, regarding Mrs. Shorette's responsibilities as the veteran's fiduciary—and despite the Secretary's prior assertions that "[i]t is the fiduciary who has the duty and responsibility to make payment decisions," and the budget information provided by VA to the fiduciary "is *not a mandate* from VA to pay particular bills nor a limitation to pay only those bills," Secretary's May 29, 2024, MOL at 6 (emphasis added)—the analyst noted:

4

In a letter dated March 18, 2024, VA notified Mrs. Shorette of her appointment as fiduciary. The letter included a budget[] outlining that Mrs. Shorette *must* provide the [v]eteran $100.00 per month in personal spending.

. . . .

P&F also stresses that *Mrs. Shorette is expected to follow the budget* outlined in the notification letter dated March 18, 2024, which provides that the beneficiary is to receive $100 per month for personal needs/incidentals. *Failure to comply* with giving the beneficiary adequate funds was the reason for her initial removal and failure to do so again *could result in another fiduciary replacement*.

Secretary's Aug. 8, 2024, Resp., Ex. 1, Decl. at ¶¶ 18, 20 (emphasis added).[2]

## II. CONCEDED ERRORS

The Court held oral argument on August 27, 2024, during which the Secretary conceded numerous errors made by VA and the prior paid fiduciary related to disbursing and managing the beneficiary's (veteran's) funds "according to the best interests of the beneficiary and the beneficiary's *dependents* and in light of the beneficiary's unique circumstances, needs, desires, beliefs, and values." 38 C.F.R. § 13.140(a)(1) (2024) (emphasis added); *see* 38 C.F.R. § 13.120(b) (2024) (providing a nonexhaustive list of inquiries, investigations, or monitoring activities that may be conducted during a VA field examination, including "[a]ssessing a beneficiary's and the beneficiary's dependents' welfare . . . and overall financial situation"). Specifically, the Secretary made the following admissions:

- Although VA suggested that the petitioner's allotment for family expenses had been terminated because she did not cooperate with a VA field examination, VA failed to contact the petitioner's attorney after she explained, in March 2019, that she would not talk to the field examiner while her appeal of VA's misuse determination was pending, but she told the field examiner to contact her attorney. *See* Oral Argument (OA) at 47:50-48:20; *see also* Secretary's May 29, 2024, MOL, Ex. 1 (March 2019 field examination report reflecting that the petitioner provided the field examiner with the name, address, and telephone number of her attorney).

- It was the prior fiduciary's duty to obtain information about the dependent's expenses, and there is no indication the prior fiduciary did so. *See* OA at 51:30-51:53; *see also* OA at 58:11-58:18 ("I don't know that the other fiduciary was particularly aware and that may be a failing both on the part of the fiduciary and the field exam that resulted in the appointment.").

- The fiduciary hub field examiner also should have gathered information regarding the dependent's expenses and provided it to the fiduciary. OA at 49:40-50:10. *But see* VA FIDUCIARY PROGRAM MANUAL (FPM), pt.1, ch. 1, § B.5.f ("The [field examiner] is

---

[2] The Court notes that VA's response to the petition reflects that the VA medical facility where the veteran resides had asked the paid fiduciary to "stop placing funds in the [veteran's] Patient Funds Account as the balance was in excess of $1500.00 and the funds were not being utilized." Secretary's Jan. 18, 2024, Resp., Ex. 4.

responsible for taking *independent corrective action immediately*, when appropriate, to ensure the [] proper use of VA/beneficiary funds.") (emphasis added); *see also* 38 C.F.R. § 13.120(b).

- VA took no proactive steps to initiate corrective action even though the petitioner repeatedly wrote to VA indicating that the family's expenses were not being paid. OA at 48:45-49:30. *But see* FPM, pt.1, ch. 1, § B.5.f.

- VA did not contact the veteran's fiduciary between 2018 and 2024 to inform the fiduciary that one of the veteran's dependents was not being taken care of. OA at 48:45-49:30. *But see* 38 C.F.R. § 13.120(b).

- Despite the prior fiduciary agreement budgeting over $3,000 per month for familial expenses, VA did not consider Mrs. Shorette's repeated reports—including the October 2023 letter alleging that the paid fiduciary had not provided for the veteran's dependents for more than 5 years—an allegation of inappropriate action. OA at 59:26-1:00:25.

- The August 2024 declaration from the P&F analyst reads like a mandate—the petitioner "'is expected to follow the budget'" and that "'[f]ailure to comply . . . could result in another fiduciary replacement,'" but contending "that is not correct." OA at 53:03-55:05 (quoting Secretary's Aug. 8, 2024, Resp., Ex. 1, Decl. at ¶ 20).

- VA erred when it cited estrangement as the reason for the nature of Mrs. Shorette's appointment as a VA-appointed fiduciary instead of the less restrictive spouse payee. OA at 1:07:25-1:08:00.

- In the August 2024 declaration, the P&F analyst did not mean to say that Mrs. Shorette would "need" VA's permission to reimburse herself. The affirmative response to the Court's specific question whether Mrs. Shorette *needed* VA's permission was meant to convey that seeking and receiving VA's permission in advance would simply assure her that VA did not find such a disbursement to be a misuse or a failure to properly fulfill the duties of a fiduciary. OA at 42:03-43:33.

- Notwithstanding all the conceded errors, if Mrs. Shorette reimburses herself without VA's permission for the expenses she paid since 2018, in VA's oversight capacity, it "might need to investigate and gather information" whether that disbursement was appropriate and, if VA decides that it was not appropriate or a misuse of funds, VA could remove her as fiduciary. OA at 1:00:25-1:03:46; *see* OA at 42:03-43:33.

In sum, VA admittedly erred in 2018 when it determined that Mrs. Shorette misused the veteran's funds, and the undisputed facts reflect that VA compounded that error over the next 6 years by ignoring Mrs. Shorette's complaints and failing to ensure that the prior paid fiduciary was fulfilling his duties to assess the welfare and overall financial situation of the veteran's dependents. In that regard, counsel for the Secretary could not offer any reason why the fiduciary budget for familial expenses was reduced from roughly $3,200 per month to *zero*, other than an unfounded allegation that the petitioner refused to comply with a field examination, and counsel

was unable or unwilling to say that VA will not investigate Mrs. Shorette if she reimbursed herself with those funds that would not have accumulated in the veteran's managed account but for VA's or the prior fiduciary's errors.

The Court will thus require the Secretary to file a supplemental memorandum of law addressing why VA appears to be unwilling to make a preemptive decision that it will not initiate a misuse determination or seek to remove Mrs. Shorette as fiduciary if she reimburses herself the amount of familial expenses that was in the prior budget but unpaid. The Secretary should specifically address the P&F analyst's statement that VA has "concerns" regarding the amount that the petitioner seeks to withdraw from the veteran's funds currently under management, Secretary's Aug. 8, 2024, Resp., Ex. 1, Decl. at ¶ 20, given that (1) all evidence before the Court suggests that those funds would not have accumulated had VA or the prior fiduciary properly fulfilled their duties to the veteran's dependents, (2) "[t]he United States pays compensation to veterans when they have, in honorable service to their nation, suffered a loss that is reflected in the decreased ability to earn a living for themselves *and their families*," *Hunt v. Derwinski*, 1 Vet.App. 292, 296 (1991) (emphasis added), *overruled on other grounds by Ward v. Wilkie*, 31 Vet.App. 233 (2019), and (3) evidence before the Court suggests that the veteran is not able to use additional funds himself, *see* Secretary's Jan. 18, 2024, Resp., Ex. 4. Additionally, the Court will order the parties to participate in another conference with a member of the Court's Central Legal Staff to discuss whether there is a mutually agreeable resolution to the matter. *See* U.S. VET. APP. R. 2, 33(a).

### III. SANCTIONS

This Court, like other federal courts, "possesses the inherent as well as the statutory authority to impose sanctions." *Pousson v. Shinseki*, 22 Vet.App. 432, 436 (2009) (per curiam order); *see* 18 U.S.C. § 401; 38 U.S.C. § 7265. Although a court considering whether to impose sanctions "'must take care to determine that the conduct at issue actually abused the judicial process,' . . . such action is not limited . . . to circumstances involving bad faith" or willfulness. *Pousson*, 22 Vet.App. at 436-37 (first quoting *Jones v. Derwinski*, 1 Vet.App. 596, 607 (1991); then citing *United States v. Saccoccia*, 342 F. Supp. 2d 25, 30 (D.R.I. 2004), *rev'd on other grounds*, 433 F.3d 19 (1st Cir. 2005); then citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980); and then citing 18 U.S.C. § 401).

Pursuant to statute, sanctions are permitted when there is "'misbehavior' before the Court 'or so near thereto as to obstruct the administration of justice,' or . . . 'misbehavior of any of its officers in their official transactions' or . . . 'disobedience or resistance to its lawful writ, process, order, rule, decree, or command.'" *Id.* at 437 (quoting 38 U.S.C. § 7265). In *Pousson*, the Court established "three essential elements" to hold a party in civil contempt: (1) "there must be an order that is 'clear and unambiguous'"; (2) "the proof of non-compliance with that order must be 'clear and convincing'"; and (3) "it must be shown that the contemnor has not 'been reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Id.* (citations omitted).

Here, the Secretary filed at least two pleadings representing to the Court that it is the VA-appointed fiduciary, not VA, who is responsible for managing a beneficiary's funds and determining the best interests of the beneficiary and the beneficiary's dependents. *See* Secretary's Jan. 18, 2024, Resp.; Secretary's May 29, 2024, MOL. Less than 3 weeks before oral argument,

however, the Secretary responded affirmatively to the Court's question "whether Mrs. Shorette acting in her role as fiduciary would require VA's permission to reimburse herself, as the veteran's dependent, for those expenses unpaid from 2018." *Shorette*, U.S. Vet. App. No. 23-7775 (July 18, 2024) (unpublished per curiam order), at 2; *see* Secretary's Aug. 8, 2024, Resp., Ex. 1, Decl. at ¶ 20 ("Yes, the fiduciary must provide evidence that reimbursement is warranted before VA will authorize a reimbursement of funds."). The P&F analyst indicated that Mrs. Shorette *must* provide clear evidence that she used her own funds to pay familial expenses during a period when VA had withheld all payments and that she would have to demonstrate "a cause or need for reimbursement." Secretary's Aug. 8, 2024, Resp., Ex. 1, Decl. at ¶ 20.

The Court relied in part on the analyst's declaration to prepare for oral argument only for the Secretary to then disavow her representations. Counsel stated that it would not violate the fiduciary rules for Mrs. Shorette to reimburse herself and that the petitioner would *not need* VA's permission to reimburse herself. *See* OA at 42:03-43:33. Additionally, although the analyst indicated that Mrs. Shorette "must provide the [v]eteran $100.00 per month in personal spending," that she "is expected to follow the budget," and that "[f]ailure to comply . . . could result in another fiduciary replacement," counsel stated that that information was "not correct." Secretary's Aug. 8, 2024, Resp., Ex. 1, Decl. at ¶¶ 18, 20; OA at 53:03-55:05.

The Court will thus order the Secretary to show cause why counsel's failure to correct statements that VA knew to be false prior to the oral argument was not an abuse of the judicial process and that sanctions are not warranted. *See generally Jones*, 1 Vet.App. at 607 ("The failure to correct promptly a statement made in response to a direct question from the Court, a statement which was discovered to have been false and which was expressly relied upon by the Court, constituted 'misbehavior [which obstructed] the administration of justice.'" (quoting 38 U.S.C. § 7265(a)(1))).

## IV. CONCLUSION

Accordingly, it is

ORDERED that the Secretary, within 14 days after the date of this order, file a supplemental memorandum of law, not exceeding 5 pages, addressing why VA will not make a preemptive determination that reimbursement would not be considered misuse of the veteran's funds. It is further

ORDERED that the Court will schedule a staff conference within 14 days after the Secretary files his supplemental memorandum of law, and this conference may be rescheduled by the Court only upon a showing of good cause. *See* U.S. Vet. App. R. 33. It is further

ORDERED that the attorney or representative for both parties shall attend the conference with the authority to resolve any of the outstanding matters presented in the petition to the extent authorized by the client or be within immediate contact with such a person during the staff conference. It is further

ORDERED that the parties, within 14 days after the date of the conference, notify the Court whether they are negotiating a joint resolution as to this matter. It is further

ORDERED that the Secretary, within 30 days after the date of this order, show cause why sanctions are not appropriate. It is further

ORDERED that proceedings are otherwise stayed pending further order of the Court.

DATED: September 20, 2024                                          PER CURIAM.