Citation Nr: 21050012
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 16-10 520
DATE: August 13, 2021

ORDER

Entitlement to service connection for left knee disorder is denied.

Entitlement to an initial compensable disability rating for allergic rhinitis is denied.

Entitlement to an initial compensable disability rating for obstructive sleep apnea, status post tonsillectomy and uvulopalatopharyngoplasty with history of external valve collapse and deformity of the nose (sleep apnea) prior to February 3, 2016, and higher than 30 percent disabling from February 3, 2016 is denied.

FINDINGS OF FACT

1. The Veteran is not shown to have a current left knee disorder.

2. The Veteran's allergic rhinitis is not manifested by greater than 50 percent obstruction of nasal passage on both sides or of complete obstruction on one side. 

3. Prior to February 3, 2016, the Veteran's sleep apnea did not result in compensable symptoms. 

4. Since February 3, 2016, the Veteran's sleep apnea has been manifested by persistent daytime hypersomnolence and has not required the use of a breathing assistance device such as a continuous positive airway pressure (CPAP) machine. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for left knee disorder are not met. 38 U.S.C. §§ 1110, 1117, 1131, 5107; 38 C.F.R. § 3.303.

2. The criteria for a compensable disability rating for allergic rhinitis are not met. 38 U.S.C. §§ 1155, 5107, 38 C.F.R. §§ 3.655, 4.97, Diagnostic Code (DC) 6522.

3. The criteria for a compensable disability rating for sleep apnea prior to February 3, 2016, and higher than 30 percent disabling from February 3, 2016 are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. § 4.97, DC 6847.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from February 1999 to July 2014. This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2015 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado. The RO, in pertinent part, denied service connection for a left knee disorder and granted service connection and noncompensable (0 percent) ratings for allergic rhinitis and obstructive sleep apnea, effective August 1, 2014. In April 2016, while the current appeal was pending, the RO amended the characterization of the Veteran's sleep apnea disability to include status post tonsillectomy and uvulopalatopharyngoplasty (UPPP) and history of external valve collapse with deformity of the nose and increased the rating to 30 percent, effective February 3, 2016.

In November 2019, the Board denied service connection for the left knee and denied higher ratings for allergic rhinitis and obstructive sleep apnea. The Veteran appealed the Board's decision to the U.S. Court of Appeals for Veterans Claims (Court). In October 2020, the Court granted a Joint Motion for Remand (JMR) filed by the parties to the appeal (the Veteran, through an attorney, and representatives from VA General Counsel), thereby vacating the Board's decision and remanding the issues for readjudication. 

The Board then remanded the case in April 2021 to obtain pertinent treatment records, notably those from VA facilities located in Las Vegas, Nevada, and Columbia, South Carolina. The RO received a response from the VA Medical Center and VA Joint Legacy Viewer for Veteran Treatment Records stating that there were "no records available that were not already of record." In a May 2021 final attempt letter the RO informed the Veteran of the actions it took and explained that the VA treatment records could not be located and therefore were unavailable for review. Further, all efforts to obtain these records had been exhausted and further attempts would be futile. The Veteran was informed that he could submit any relevant documents in his possession to the VA. Thereafter, the Veteran's representative responded that there was no additional information or evidence to submit. See Due Process Waiver uploaded to the Veteran's Virtual VA electronic record on July 1, 2021. 

Service Connection

The Veteran seeks service connection for a left knee disorder.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Continuity of symptomatology may also provide a basis for a grant of service connection for those diseases defined as "chronic" by VA. 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Certain chronic diseases are subject to presumptive service connection if manifest to a compensable degree within one year from separation from service even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1112, 1113; 38 C.F.R. §§ 3.307 (a)(3), 3.309(a). 

Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

The Veteran contends that he has a current left knee disorder that is related to his military service. However, the primary impediment to a grant of service connection is the absence of a current disability. 

Service treatment records show that on May 3, 2013, the Veteran tripped and fell in his garage landing on and injuring his left knee. The Veteran sought treatment at Southern Hills Hospital and Medical Center, a civilian medical facility where he complained of pain on weight bearing. The left knee had soft-tissue tenderness and a single puncture wound located in the patella. There was limited range of motion secondary to pain as well as joint effusion. X-ray revealed soft tissue swelling and small joint effusion. There was no bony injury. The Veteran was fitted with a long leg Velcro knee immobilizer to the left knee as well as crutches and follow-up was recommended. The clinical impression was noted as left knee joint effusion due to a fall. A few days later the Veteran phoned his military doctor and described the incident.

On May 14, 2013, the Veteran reported continued left knee pain that worsened when sitting on aircraft at altitude (the Veteran's duties required frequent flying). The Veteran stated that he did not have that issue when sitting at a desk for work. On examination he had very mild edema and peripatellar puffiness with no bulging. Negative McMurray, Drawer, and lateral laxity were noted. The assessment was left patella femoral syndrome status post trauma. The Veteran was put on physical training restriction for 4-6 weeks, given a two-week dose of Naproxen, and told to follow-up with his physician. The physician noted if there was no improvement then he would consider two additional weeks of NSAIDs, formal physical therapy, and if that failed, then a referral to ortho would be considered.

A June 2013 follow-up note reflects that the Veteran reported increased pain with increased activity and at night. He was still doing physical therapy at home and taking his prescribed Naproxen. On examination, McMurray and Drawer were negative and there was no edema. The assessment was left knee PFS likely. The Veteran was told to continue medication and home physical therapy and that formal physical therapy would be scheduled. He was instructed to follow-up in two weeks. There are no further treatment notes for the left knee in the service treatment records.

There are also no post-service VA or private treatment records that show treatment for a left knee condition. See May 2021 Final Attempt Letter. A December 2014 VA knee and lower examination reflects that there was no objective evidence of left knee patellofemoral pain syndrome on examination and therefore a clinical diagnosis of a left knee condition could not be rendered. Likewise, a VA Gulf War examination in June 2018, failed to provide any diagnosis of a left knee disorder.

A VA examination in June 2021, also failed to provide any diagnosis of a left knee disorder. The Veteran reported pain walking long distances, but the current examination was unremarkable. Range of motion of the left knee was normal with no pain or crepitus noted. Muscle strength testing was normal with no atrophy and there was no evidence of instability, tibial/fibular impairment, or meniscal conditions. There were no findings of chronic exertional compartment syndrome of the left lower extremity. The Veteran walked with a normal gait with no assist devices. The left knee did not impact his ability to perform any type of occupational task (such as standing, walking, lifting, sitting, etc.). 

The examiner concluded the Veteran did not have a current diagnosis associated with any claimed left knee condition. She noted the Veteran's history of left knee pain after falling in his garage in 2013 with a notation of left patellofemoral pain syndrome at separation. However, the examination performed on that day was normal and the current knee exam was also normal. The examiner also noted that review of the medical records showed no left knee entries since service, including a June 2018 Gulf War exam that showed normal joint range of motion of all joints. Therefore, it is less likely than not that the Veteran's left knee problems are related to anything that occurred in the military and in fact, there is no evidence of any pathology present at all.

The Board finds that the weight of the evidence reflects that the Veteran does not currently have a left knee disorder to include a showing of chronic functional impairment. Under applicable regulation, the term "disability" means impairment in earning capacity resulting from diseases and injuries and their residual conditions. 38 C.F.R. § 4.1; Hunt v. Derwinski, 1 Vet. App. 292 (1991); Allen v. Brown, 7 Vet. App. 439 (1995); Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018) (the term "disability" as used in 38 U.S.C. § 1110 refers to the functional impairment of earning capacity). The objective evidence shows a diagnosis of a left knee disorder at the time of the filing of the claim or during the pendency of the claim. Despite the Veteran's in-service left knee injury, patellofemoral syndrome was suspected but not actually confirmed. After service he was provided several VA examinations and none of the examiners found objective clinical evidence of left knee patellofemoral syndrome as repeated evaluation of his complaints failed to identify an underlying pathology. In addition, the Veteran has not described or presented evidence of any specific functional loss or impairment due to left knee problems. To the extent, he is competent to report left knee problems during and since service, he does not have the medical expertise to make a diagnosis or to opine on the relationship between his in-service injury and any currently experienced symptoms. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n. 4 (Fed. Cir. 2007).

The existence of a current disability is the cornerstone of a claim for VA disability compensation. See Degmetich v. Brown, 104 F.3d 1328 (1997) (holding that the VA's and the Court's interpretation of sections 1110 and 1131 of the statute as requiring the existence of a present disability for VA compensation purposes cannot be considered arbitrary and therefore the decision based on that interpretation must be affirmed); see also Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). So, without competent evidence of a current disability, service connection cannot be awarded for a left knee disorder. Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).

Increased Rating

The Veteran seeks higher disability ratings for his service-connected allergic rhinitis and sleep apnea.

Disability ratings are determined by comparing a veteran's present symptomatology with the criteria set forth in the VA Schedule for Rating Disabilities, which is based upon average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings applies under a particular diagnostic code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt is resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

The Veteran's entire history is considered when assigning disability ratings. 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). A review of the recorded history of a disability is necessary to make an accurate rating. 38 C.F.R. §§ 4.2, 4.41. The regulations do not give past medical reports precedence over current findings where such current findings are adequate and relevant to the rating issue. Francisco v. Brown, 7 Vet. App. 55 (1994); Powell v. West, 13 Vet. App. 31 (1999). The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

allergic rhinitis

The Veteran's allergic rhinitis is currently rated as 0 percent disabling under DC 6522. Under this diagnostic code a 10 percent disability rating is warranted for allergic or vasomotor rhinitis without polyps, but with greater than 50-percent obstruction of the nasal passages on both sides or complete obstruction on one side. A 30 percent disability rating is warranted for allergic or vasomotor rhinitis with polyps. 38 C.F.R. § 4.97 DC 6522. 

As here, where the schedule does not provide for a 0 percent rating, such an evaluation will be assigned when the requirements for a compensable evaluation have not been met. 38 C.F.R. § 4.31. 

A December 2014 VA examination confirmed a diagnosis of allergic rhinitis but noted there was no obstruction of the nasal passages greater than 50 percent complete obstruction on one side, permanent hypertrophy of the nasal turbinates, nasal polyps, or any granulomatous conditions. The examiner stated the Veteran was able to perform all activities of daily living and instrumental activities of daily living. There was no objective evidence of an external valve collapse on examination.

In response to the Veteran's December 2015 notice of disagreement and January 2016 substantive appeal, in which he stated he had obstruction of the nasal passages, the Veteran was scheduled for a VA examination to assess the severity of his service-connected disability. An April 6, 2018 Report of General Information reflects that the Veteran called to reschedule the VA rhinitis examination because he forgot the date of the examination but that he would make the rescheduled exam. An April 23, 2018 exam scheduling request shows the allergic rhinitis examination was canceled because the Veteran was a "no show" for the VA examination.

The remaining record does not otherwise indicate instances of treatment, medication, hospitalizations, or complaints of any symptoms reasonably attributable to allergic rhinitis which support a higher rating. See May 2021 Final Attempt Letter and Due Process Waiver uploaded to the Veteran's Virtual VA electronic record on July 1, 2021. 

Based on the available medical evidence, the Board finds that the preponderance of the evidence weighs against a finding of a compensable evaluation for allergic rhinitis. As noted above, to receive a compensable evaluation for this disability under DC 6522, the record must reflect that the Veteran has allergic rhinitis without polyps with greater than 50 percent obstruction of nasal passage on both sides or complete obstruction on one side. While the evidence supports a finding that the Veteran has had a diagnosis of allergic rhinitis without polyps since the initial grant of service connection, it does not reflect that he has had obstruction of the nasal passages at any time during this appellate period. The Board notes that the Veteran asserted obstruction of his nasal passages in January 2016 statement, unfortunately, the Veteran was a no show for his scheduled VA examinations to assess the severity of his allergic rhinitis disability. 

Based on the above, the Veteran's allergic rhinitis is not manifested by sufficient symptomatology to warrant a compensable disability rating. As noted above, to receive a 10 percent evaluation for this disability under DC 6522, the record must reflect allergic rhinitis without polyps with greater than 50 percent obstruction of nasal passage on both sides or complete obstruction on one side. This has not been shown. The Board notes that while the Veteran asserted obstruction of his nasal passages, he failed to report for his scheduled VA examinations to assess the severity of his allergic rhinitis disability. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991) (duty to assist is not a one-way street). 

Normally when an examination is scheduled in conjunction with a claim for increase and a veteran fails to report for the examination, the claim shall be denied. 38 C.F.R. § 3.655. However, this is an initial rating claim where the claim for increase has been on appeal since the claim for service connection was granted. So, to afford the Veteran every consideration with respect to his appeal, the Board has considered his claim based on the evidence of record as if it was an original compensation claim. Unfortunately, the only available evidence, based upon examination of the Veteran and review of the medical record, is the 2014 VA examination report. In this case, his failure to cooperate and report for VA examination has served only to deprive the Board of critical, clarifying medical evidence, which might have helped determine whether he met the scheduler criteria for a higher disability rating. Therefore, the Veteran's service-connected allergic rhinitis is not manifested by sufficient symptomatology to warrant a compensable disability rating. 

The Board has also considered whether other diagnostic codes are applicable to this issue. Given the absence of findings regarding bacterial or granulomatous rhinitis, a rating under DC 6522 is most appropriate in this case. See 38C.F.R. § 4.97. Accordingly, the preponderance of the evidence is against the claim, and there is no reasonable doubt to be resolved. 38 U.S.C. § 5107(b).

sleep apnea

The Veteran's sleep apnea is currently rated as 30 percent disabling under DC 6847, effective February 3, 2016. Prior to that date, it is rated as 0 percent. He contends that a compensable rating is warranted for the period prior to February 3, 2016 as he was experiencing hypersomnolence. See January 2016 VA Form 9, received in March 2016.

Under DC 6847, a noncompensable rating is warranted for sleep apnea that is asymptomatic but with documented sleep disorder breathing. A 30 percent rating is warranted for sleep apnea that is productive of persistent daytime hypersomnolence. A 50 percent rating is warranted for sleep apnea requiring use of breathing assistance device such as a CPAP machine. A 100 percent rating is warranted for sleep apnea requiring chronic respiratory failure with carbon dioxide retention or cor pulmonale, or; requires tracheostomy. 38 C.F.R. § 4.97. 

prior to February 3, 2016

The Veteran was afforded a VA sleep apnea examination in December 2014 where the examiner noted the Veteran's June 2013 diagnosis of mild obstructive sleep apnea. He reported that he had snored for as long as he could remember and that the UPPP surgery done in 2012 improved his ability to sleep. The examiner noted the Veteran did not have any current findings, signs, or symptoms attributable to sleep apnea at the time of the VA examination and the Veteran did not report any other than snoring. The Veteran denied the use of any medications or the use of a CPAP machine to treat his mild obstructive sleep apnea.

Based on the evidence above, the Board finds that a compensable rating is not warranted for mild obstructive sleep apnea prior to February 3, 2016. 

from February 3, 2016

At a February 2016 VA sleep apnea examination, the Veteran reported that his current symptoms were snoring, which was getting worse, and daytime tiredness. Additionally, he reported that his wife told him he is pausing when he breathes at night and that he is tired during the day. The Veteran denied the use of continuous medication for control of a sleep disorder or the use of a breathing assistance device such as a CPAP machine. The examiner noted the Veteran's symptom as persistent daytime hypersomnolence.

Based on the February 2016 VA examiner's findings, the Veteran's disability rating was increased to 30 percent disabling for persistent daytime hypersomnolence. As there is no evidence the Veteran requires or uses a CPAP machine, has chronic respiratory failure with carbon dioxide retention or cor pulmonale, or requires tracheostomy, a rating higher than 30 percent is not warranted for his mild obstructive sleep apnea disability.

With regard to both time periods, the remaining record does not otherwise indicate instances of treatment, medication, hospitalizations, or complaints of any symptoms reasonably attributable to sleep apnea which support a higher rating. See May 2021 Final Attempt Letter and Due Process Waiver uploaded to the Veteran's Virtual VA electronic record on July 1, 2021. 

Accordingly, the Board finds that a 30 percent rating, but no higher, is warranted for sleep apnea from February 3, 2016.

 

 

KELLI A. KORDICH

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board Bryant, Jeana R

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.